IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

MARYLAND SHALL ISSUE, INC., *et al.*,   *

*Plaintiffs-Appellants/Cross-Appellees,*   *

v.   *   Case Nos. 21-2017, 21-2053

LAWRENCE HOGAN, *et al.*,   *

*Defendants-Appellees/Cross-Appellants.*   *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**APPELLEES' OPPOSITION TO MOTION
TO HOLD APPEAL IN ABEYANCE**

Appellants seek to hold this appeal in abeyance pending the United States Supreme Court's disposition of *New York State Rifle Ass'n v. Bruen*, No. 20-843. Because the issues in the present case are substantively different from those presented in *Bruen*, appellants' motion should be denied.

The issue in *Bruen* is "[w]hether [New York's] denial of petitioners' applications for concealed-carry licenses for self-defense violated the Second Amendment." Order, No. 20-843 (U.S. April 26, 2021). In contrast, the present case has nothing to do with the right to carry firearms. Rather, the issue in this case is whether Maryland's law requiring residents to obtain a Handgun Qualification License ("HQL") before acquiring a handgun violates the Second Amendment. Under the HQL law, certain Maryland residents seeking to purchase or otherwise acquire a handgun must first obtain an HQL. To receive an HQL, an applicant must simply be fingerprinted (and pass a background investigation) and take a four-hour firearms safety training course. Although the constitutionality of both New

York's concealed-carry permit law and Maryland's HQL law involves application and interpretation of the Second Amendment, they involve distinct substantive areas of that ever-widening jurisprudence. For example, unlike the issue of public-carry, which affects what one may do with a handgun once they have lawfully obtained it, Maryland's HQL requirement relates to the extent to which a state may lawfully vet those who wish to purchase or acquire a handgun. The laws have different aims and effects, different historical antecedents, and overall implicate different policy and safety rationales.

Accordingly, although it is expected that the Supreme Court in *Bruen* will clarify how the Second Amendment is to be applied in the context of public-carry laws, it is questionable whether *Bruen* will provide similar clarity in other areas of Second Amendment jurisprudence. Indeed, in the landmark case of *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court—while resolving the issue of whether the Second Amendment encompassed an individual right—explained that different types of restrictions on that right would be subject to different standards. For example, although the Supreme Court examined the history of the right and the interpretive guides that existed at the time of the Second Amendment's ratification to determine that a total ban on individual possession of handguns was unconstitutional, in doing so the Supreme Court also endorsed other more recent laws that seemingly had no similar historical antecedents, such as restrictions on possession by felons or within sensitive areas. *Id*. at 626-27. Appellants' suggestion that *Bruen* will provide a one-size-fits-all comprehensive standard that will govern *all* laws affecting firearms would thus require a significant reworking of *Heller*, which is highly unlikely.

2

Appellants claim that holding this appeal in abeyance would be "unremarkable," given that this Court has already held another case in abeyance pending disposition of *Bruen*. But that case, *Call v. Jones*, No. 21-1334, involves the constitutionality of Maryland's public-carry law, which is substantively similar to the laws at issue in *Bruen* (and substantively dissimilar to the law in this case). It can thus be expected that, should the Supreme Court decide the merits of *Bruen*, the principles announced in that decision will have direct impact on the resolution of *Call v. Jones*. Indeed, that is why the State joined the appellants in that case in asking this Court to hold that case in abeyance. But here, where Maryland's HQL law simply occupies the same general jurisprudential landscape as *Bruen*, the probability of any similar impact is much lower.

It is axiomatic that federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976). Because there is no compelling reason to delay hearing this appeal given the dissimilarity between the laws at issue, this Court should decline to hold this appeal in abeyance pending the disposition of *Bruen*.

## CONCLUSION

The Court should deny appellants' motion to hold appeal in abeyance.

Respectfully Submitted,

BRIAN E. FROSH
Attorney General

/s/ Robert A. Scott
ROBERT A. SCOTT
RYAN R. DIETRICH
Assistant Attorneys General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
rscott@oag.state.md.us
(410) 576-7055
(410) 576-6955 (facsimile)

October 18, 2021                    Attorneys for Appellees/Cross-Appellants