**No. 21-2017 (L)**

---

**In the
United States Court of Appeals
for the Fourth Circuit**

---

**MARYLAND SHALL ISSUE, *et al.*,**
Plaintiffs-Appellants

v.

**LAWRENCE HOGAN, *et al.*,**
Defendants-Appellees

---

On Appeal from the United States District Court
for the District of Maryland
No. 1:16-cv-03311-ELH (Hon. Ellen L. Hollander)

---

**BRIEF OF APPELLANTS**

---

Cary J. Hansel, III
2514 N. Charles Street
Baltimore, MD 21218
Phone: 301-461-1040
Facsimile: 443-451-8606
cary@hansellaw.com

Mark W. Pennak
Maryland Shall Issue, Inc.
9613 Harford Rd.
Ste. C #1015
Baltimore, MD 21234
Phone: 301-873-3671
m.pennak@me.com

Counsel for Appellants

John Parker Sweeney
James W. Porter, III
Marc A. Nardone
Connor M. Blair
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-393-7150
Facsimile: 202-347-1684
jsweeney@bradley.com

Counsel for Appellant Atlantic Guns, Inc.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _21-2017_      Caption: _Maryland Shall Issue, Inc., et al. v. Lawrence Hogan, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Maryland Shall Issue, Inc._
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.  Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Cary Hansel _____        Date: _____09/20/2021_____

Counsel for: Appellants _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. _21-2017_         Caption: _Maryland Shall Issue, Inc., et al. v. Lawrence Hogan, et al._

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Deborah Kay Miller_
(name of party/amicus)


_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                    ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                      ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Cary Hansel                                Date:        09/20/2021

Counsel for: Appeallants

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __21-2017__        Caption:  __Maryland Shall Issue, Inc., et al. v. Lawrence Hogan, et al.__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Susan Brancato Vizas__
(name of party/amicus)


_____

 who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                        ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                ☐YES ☑NO
        If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Cary Hansel _____      Date: _____09/20/2021_____

Counsel for: Appeallants _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 21-2017L    Caption: Maryland Shall Issue, Inc., et al. v. Lawrence Hogan, et al.
    21-2053

Pursuant to FRAP 26.1 and Local Rule 26.1,

Atlantic Guns, Inc.
(name of party/amicus)


who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?  ☐YES ☑NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
    If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct
      financial interest in the outcome of the litigation?                    ☐YES ☑NO
      If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
      If yes, identify any publicly held member whose stock or equity value could be affected
      substantially by the outcome of the proceeding or whose claims the trade association is
      pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
      If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
      party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
      caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
      corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
      If yes, the United States, absent good cause shown, must list (1) each organizational
      victim of the criminal activity and (2) if an organizational victim is a corporation, the
      parent corporation and any publicly held corporation that owns 10% or more of the stock
      of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ John Parker Sweeney              Date:        9/28/2021

Counsel for: Atlantic Guns, Inc.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES. ........................................................ iv

JURISDICTIONAL STATEMENT ............................................... 1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 2

STATEMENT OF THE CASE.......................................................... 3

    I.     Procedural history and ruling presented for review ............................ 3

    II.    Statement of the facts .......................................................... 5

        A.    The Plaintiffs............................................................ 5

            1.   The Individual Plaintiffs do not possess a handgun because the HQL Requirement burdens their ability to acquire a handgun. ........................................................ 5

            2.   Some Members of Maryland Shall Issue do not possess a handgun because the HQL Requirement burdens their ability to acquire a handgun. ................................. 5

            3.   Atlantic Guns sells fewer handguns to a smaller pool of ordinary, law-abiding Maryland citizens because the HQL Requirement burdens individuals' ability to acquire a handgun. ...................................................... 6

        B.    Maryland's historical laws regulating handgun possession in the home............................................................... 6

            1.   The 77R Handgun Registration Requirement .................. 7

            2.   The Gun Violence Act of 1996.............................. 7

            3.   The Responsible Gun Safety Act of 2000 ...................... 7

        C.    The HQL Requirement ................................................ 8

SUMMARY OF ARGUMENT .......................................................... 10

STANDARD OF REVIEW ................................................................... 11

ARGUMENT ...................................................................................... 11

I.  The District Court committed reversible error by upholding the HQL Requirement under means-end scrutiny, an incorrect legal standard. ............................................................................ 12

   A.  Using an incorrect legal standard is reversible error. .............. 12

   B.  The District Court committed reversible error by using an incorrect legal standard to uphold the HQL Requirement. ....... 13

      1.  The Supreme Court has confirmed the text and history standard for analyzing Second Amendment challenges and rejected using means-end scrutiny. .............................. 13

      2.  The District Court upheld the HQL Requirement under means-end scrutiny. ........................................................... 14

   C.  This Court should decide the merits of this case and not remand to the District Court. .................................................... 15

II. The HQL Requirement violates the Second Amendment. ................ 17

   A.  The HQL Requirement burdens conduct protected by the Second Amendment's plain text. .............................................. 17

   B.  The State cannot demonstrate that the HQL Requirement is consistent with this Nation's historical tradition of firearm regulation. .................................................................. 23

      1.  The HQL Requirement is a novel attempt at solving a centuries-old general societal problem. .............................. 23

      2.  Even if the HQL Requirement were meant to address an unprecedented societal problem or dramatic technological change, it lacks a relevantly similar historical analogue. ... 31

CONCLUSION .................................................................................. 33

REQUEST FOR ORAL ARGUMENT ................................................. 34

CERTIFICATE OF COMPLIANCE ..................................................... 35

CERTIFICATE OF SERVICE ................................................................. 36

iii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altizer v. Deeds*,
    191 F.3d 540 (4th Cir. 1999) ...............................................................12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)............................................................................11

*Andrews v. State*,
    50 Tenn. 165 (1871).............................................................................17

*Billioni v. Bryant*,
    759 F. App'x 144 (4th Cir. 2019) ......................................................12

*Boyes v. Shell Oil Prods. Co.*,
    199 F.3d 1260 (11th Cir. 2000) .........................................................16

*Caetano v. Massachusetts*,
    577 U.S. 411 (2016)............................................................................13

*Clatterbuck v. City of Charlottesville*,
    708 F.3d 549 (4th Cir. 2013) .............................................................16

*Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*,
    996 F.3d 243 (4th Cir. 2021) .............................................................15

*D.B. v. Cardall*,
    826 F.3d 721 (4th Cir. 2016) .............................................................12

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)....................................................................*passim*

*Heller v. District of Columbia*,
    670 F.3d 1244 (D.C. Cir. 2011).....................................................22, 28

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*,
    5 F.4th 407 (4th Cir. 2021) ............................................................20, 21

*Johnson v. VanderKooi*,
    No. 160958, 2022 WL 2903868 (Mich. July 22, 2022). ...................30

*Kennedy v. Louisiana*,
   554 U.S. 407 (2008)........................................................26

*Kolbe v. Hogan*,
   849 F.3d 114 (4th Cir. 2017) .........................................11

*Maryland Shall Issue, Inc. v. Hogan*,
   971 F.3d 199 (4th Cir. 2020) ....................................*passim*

*Maryland v. King*,
   569 U.S. 435 (2013)........................................................30

*McDonald v. Chicago*,
   561 U.S. 742 (2010)..................................................13, 17

*Morel v. Sabine Towing & Transp. Co., Inc.*,
   669 F.2d 345 (5th Cir. 1982) .........................................16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
   142 S. Ct. 2111 (2022)..............................................*passim*

*Simmons v. United States*,
   390 U.S. 377 (1968)........................................................30

*Teixeira v. City of Alameda*,
   873 F.3d 670 (9th Cir. 2017) .........................................17

*U.S. v. Kin-Hong*,
   110 F.3d 103 (1st Cir. 1997)...........................................15

*United States v. Foster*,
   526 F. App'x 268 (4th Cir. 2013) ...................................18

*United States v. Gavegnano*,
   305 F. App'x 954 (4th Cir. 2009) ...................................16

*United States v. Hosford*,
   843 F.3d 161 (4th Cir. 2016) .............................20, 21, 22

**Statutes**

18 U.S.C. § 922(a)(1)(A) ........................................................21

18 U.S.C. § 922(b)(1)...............................................................21

18 U.S.C. § 922(c)(1) ..........................................................................21

28 U.S.C. § 1291 ................................................................................1

28 U.S.C. § 1331 ................................................................................1

28 U.S.C. § 1343 ................................................................................1

1778 N.J. Sess. Laws .........................................................................28

1782 Del. Sess. Laws ........................................................................28

1786 N.C. Sess. Laws ........................................................................28

1791 S.C. Sess. Laws .........................................................................28

1913 Or. Laws 497 ............................................................................28

1925 Or. Laws 468 ............................................................................28

1941 Maryland Laws, Chapter 622 ....................................................6

1966 Maryland Laws, Chapter 502 ....................................................7

2013 Maryland Laws, Chapter 427 ....................................................8

Act of May 8, 1792, Second Congress, Sess. 1, ch. 33, § 1, 1 Stat. 271 ................28

Md. Code. Ann., Art. 27, § 442 .........................................................7

Md. Code. Ann., Art. 27, § 445 .........................................................7

Md. Code Ann., Art. 27, § 531(D)–(E) ..............................................6

Md. Code Ann., Pub Safety § 5-114(b)(2) .........................................9

Md. Code Ann., Pub. Safety § 5-117.1 ...............................................1

Md. Code Ann., Pub. Safety § 5-117.1(a)(2) .......................................8

Md. Code Ann., Pub. Safety § 5-117.1(a)(3) .......................................8

Md. Code Ann., Pub. Safety, § 5-117.1(b) ......................................8, 19

Md. Code Ann., Pub. Safety, § 5-117.1(c) ......................................8, 19

vi

Md. Code Ann., Pub. Safety § 5-117.1(f)–(g) ...................................................9

Md. Code Ann., Pub. Safety § 5-118 .................................................6, 7, 8

Md. Code Ann., Pub. Safety §§ 5-120 ...................................................7

Md. Code Ann., Pub. Safety §§ 5-121 ...................................................7

Md. Code Ann., Pub. Safety § 5-123 .................................................7, 9

Md. Code Ann., Pub. Safety § 5-124 ...............................................7, 19

Md. Code Ann., Pub. Safety § 5-144 ...................................................9

**Other Authorities**

COMAR 12.15.05 ...............................................................1

COMAR 29.03.01 ...............................................................1

D. Kopel & J. Greenlee, *The "Sensitive Places" Doctrine*, 13
    Charleston L. Rev. 205 (2018) ...........................................25

David Kopel, *Background Checks for Firearms Sales and Loans:
    Law, History, and Policy*, 53 Harv. J. on Legis. 303 (2016) ...............25, 27, 29

Mark Gius, *Effects of Permit-to-Purchase Laws on State-Level
    Firearm Murder Rates*, 45 Int'l Econ. J. 73 (2017) ...........................30

Owner Responsibilities – Licensing, Giffords Law Center,
    https://giffords.org/lawcenter/gun-laws/policy-areas/owner-
    responsibilities/licensing/#footnote_12_5608 (last visited Aug. 1,
    2022). .........................................................................29

U.S. Const. amend. II ..........................................................*passim*

U.S. Const. amend. XIV ........................................................1, 17

## JURISDICTIONAL STATEMENT

Susan Vizas and Deborah Miller (collectively, "Individual Plaintiffs"), Maryland Shall Issue, Inc. ("MSI"), and Atlantic Guns, Inc. ("Atlantic Guns") (collectively, "Plaintiffs") challenge Section 5-117.1 of the Maryland Code, Public Safety and the Maryland State Police's implementing regulations, COMAR 12.15.05 and 29.03.01 (collectively, the "HQL Requirement"), under the Second and Fourteenth Amendments to the United States Constitution. The United States District Court for the District of Maryland had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The District Court's final judgment was entered on the docket on August 12, 2021. Joint Appendix ("JA") JA1810. Plaintiffs timely noticed their appeal on September 10, 2021. JA1811. This appeal is from a final judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether Maryland's HQL Requirement violates the Second Amendment because it burdens conduct protected by the Second Amendment's text and is inconsistent with the Nation's historical tradition of firearm regulation and not supported by any relevantly similar historical analogue.

## STATEMENT OF THE CASE

### I.    Procedural history and ruling presented for review

Plaintiffs' Amended Complaint alleges that the HQL Requirement violates the Second Amendment because it burdens, without a historical analogue, law-abiding, responsible Maryland citizens' right to acquire a handgun for lawful purposes such as self-defense in the home. JA0031–0033.

The District Court initially held that Plaintiffs lack standing. *See Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 205 (4th Cir. 2020). This Court reversed in part and remanded, holding that Atlantic Guns has standing to assert a Second Amendment claim independently and on behalf of its customers. *Id*. at 214, 216 (noting that the remaining Plaintiffs have standing because Atlantic Guns has standing). On remand, the District Court upheld the HQL Requirement under intermediate scrutiny, granting the State's motion for summary judgment and denying Plaintiffs' cross-motion for summary judgment. JA1869–1871. This appeal by Plaintiffs is from the Order granting summary judgment to the State and denying summary judgment to Plaintiffs.

Every court to examine whether the HQL Requirement burdens conduct protected by the Second Amendment has held that it does. First, the District Court noted that "Defendants do not deny that the HQL Provision and implementing regulations burden conduct within the scope of the Second Amendment, namely, the

3

ability of a law-abiding citizen to attain a handgun for use in the home for self defense." *See* JA0055. Then, this Court, in a unanimous panel opinion and after a "careful review" of the "uncontroverted evidence," held that the HQL Requirement burdens conduct protected by the Second Amendment because "[o]n its face, the HQL requirement undoubtedly constrains Atlantic Guns' ability to sell handguns and limits its potential customer base" by restricting its customers from purchasing handguns. *Maryland Shall Issue*, 971 F.3d. at 211–16 (citing Maryland State Police records, Atlantic Guns' sales records, and deposition testimony). Most recently, the District Court held on remand that the HQL Requirement burdens conduct protected by the Second Amendment:

> The Supreme Court has already determined that the type of firearm at issue under the HQL law—the handgun—unquestionably falls within the scope of the Second Amendment. Indeed, the Supreme Court has characterized the handgun as the quintessential self-defense weapon and observed that handguns are the most popular weapon chosen by Americans for self-defense in the home.
>
> The requirements for the purchase of a handgun, as set out in the HQL law, undoubtedly burden this core Second Amendment right because they make it considerably more difficult for a person lawfully to acquire and keep a firearm for the purpose of self-defense in the home.

JA1841 (collecting authority).

II.    **Statement of the facts**

    A.    **The Plaintiffs**

        **1.  The Individual Plaintiffs do not possess a handgun because the HQL Requirement burdens their ability to acquire a handgun.**

Susan Brancato Vizas desires to purchase a handgun for self-defense, target practice, and other lawful purposes. JA0022. But the HQL Requirement's costs and time commitments have dissuaded her from acquiring an HQL, preventing her from acquiring a handgun. JA0023.

Deborah Kay Miller desires to purchase a handgun for self-defense in her home. JA0022. But her physical disability makes it very difficult for her to sit for extended periods of time, which precludes her completion of the HQL Requirement's mandatory half day of classroom training, preventing her from obtaining an HQL and thus barring her from acquiring a handgun. JA0022–0023.

        **2.  Some Members of Maryland Shall Issue do not possess a handgun because the HQL Requirement burdens their ability to acquire a handgun.**

Maryland Shall Issue is a non-profit membership organization that promotes and defends the exercise of the right to keep and bear arms in and outside the home. MSI's membership includes each of the Individual Plaintiffs as well as numerous other Maryland residents who do not possess an HQL because of the HQL Requirement's burdens and therefore cannot purchase a handgun. JA0022, JA0024.

### 3. Atlantic Guns sells fewer handguns to a smaller pool of ordinary, law-abiding Maryland citizens because the HQL Requirement burdens individuals' ability to acquire a handgun.

Atlantic Guns is a family-owned Maryland and federally licensed firearms dealer. JA1872. The HQL Requirement burdens Atlantic Guns' customers' right to acquire handguns, which burdens Atlantic Guns' right to sell handguns. *See Maryland Shall Issue*, 971 F.3d at 211 (collecting record citations). The HQL Requirement "constrict[s] . . . [Atlantic Guns'] pool of potential customers." *Id*. at 212. Atlantic Guns has turned away hundreds of law-abiding, responsible handgun customers because they lack an HQL. JA1873.

## B. Maryland's Historical Laws Regulating Handgun Possession In The Home

In 1941, Maryland enacted a "Pistols" Subtitle to the Maryland Code to regulate the "sale, identification marks and possession of pistols." *See* 1941 Maryland Laws, Chapter 622. This statute prohibits selling or transferring a handgun to persons convicted of a crime of violence or to fugitives from justice. *See* Md. Code Ann., Art. 27, § 531(D)–(E), currently codified at Md. Code Ann., Pub. Safety § 5-118. Prior to 1941, Maryland had no regulations on the possession or acquisition of handguns. Maryland has since enacted four sets of laws intended to regulate the acquisition of handguns: the 77R Handgun Registration Requirement (1966), the Gun Violence Act of 1996, the Responsible Gun Safety Act of 2000, and the Firearms Safety Act of 2013. The 2013 legislation enacted the HQL Requirement.

6

### 1. The 77R Handgun Registration Requirement

In 1966, Maryland enacted what is known as the 77R Handgun Registration Requirement. *See* 1966 Maryland Laws, Chapter 502. This law prohibits firearms dealers from transferring a handgun to a prospective purchaser "until after seven days shall have elapsed from the time an application to purchase or transfer shall have been executed by the prospective purchaser or transferee, . . . and forwarded by the prospective seller . . . to the Superintendent of the Maryland State Police." Md. Code. Ann., Art. 27, § 442, currently codified at Md. Code Ann., Pub. Safety §§ 5-118, 5-120 & 5-123. The 77R application requires the prospective purchaser's identifying information, which the Maryland State Police uses to conduct a background check. *Id*. § 442, currently codified at Md. Code Ann., Pub. Safety §§ 5-118, 5-121.

### 2. The Gun Violence Act of 1996

The Gun Violence Act of 1996 made the 77R Handgun Registration Requirement process applicable to all handgun transfers, including gifts and private sales. Md. Code. Ann., Art. 27, § 445, currently codified at Md. Code Ann., Pub. Safety § 5-124.

### 3. The Responsible Gun Safety Act of 2000

The Responsible Gun Safety Act of 2000 expanded the 77R Handgun Registration Requirement process to require all prospective firearms purchasers to complete an hour-long, online firearm safety training course on Maryland firearm

7

law, home firearm safety, and handgun mechanisms and operation. Md. Code Ann., Pub. Safety § 5-118; JA0757.

### C.    The HQL Requirement

The HQL Requirement was enacted as part of the Firearms Safety Act of 2013 (the "FSA"). *See* 2013 Maryland Laws, Chapter 427. It added additional, redundant requirements to Maryland's pre-existing laws regulating handgun acquisition and possession in the home. The FSA is meant "to 'protect its citizens and law enforcement officers,' by regulating the sale, transfer, and possession of certain firearms within Maryland," *Maryland Shall Issue*, 971 F.3d at 206 (quoting *Kolbe v. Hogan*, 849 F.3d 114, 120, 129 (4th Cir. 2017) (en banc)), especially violence involving handguns in urban areas like Baltimore, *see* JA0083–0088, JA0112–0120.

The HQL Requirement prohibits law-abiding, responsible Maryland citizens from acquiring a handgun without first applying for and obtaining an HQL (a permit-to-purchase).[1] Md. Code Ann., Pub. Safety, § 5-117.1(c). It also prohibits anyone from transferring a handgun to anyone who does not have an HQL. *Id*. § 5-117.1(b). To apply for an HQL, a Maryland citizen must submit: (1) an online application; (2)

---

[1] The HQL Requirement does not apply to "a law enforcement officer or person who is retired in good standing from service with a law enforcement agency of the United States, the State, or a local law enforcement agency of the State" or to "a member or retired member of the armed forces of the United States or the National Guard." Md. Code Ann., Pub. Safety § 5-117.1(a) (2), (3). That exemption is not available to out-of-state law enforcement personnel who may live in Maryland.

8

proof of completion of a qualifying firearms safety course with a live-fire requirement; (3) a complete set of fingerprints; and (4) "a statement made by the applicant under the penalty of perjury that the applicant is not prohibited under federal or State law from possessing a handgun." *Id*. § 5-117.1(f)–(g). The HQL Requirement replaced the online training mandated by the Responsible Gun Safety Act of 2000 with an in-class, half-day firearms safety course covering the same subject areas. JA0757. Once the prospective purchaser obtains an HQL, he may begin the process required by the pre-existing firearms laws for an actual purchase, including undergoing another background check. JA0671–0672; Md. Code Ann., Pub. Safety § 5-123.

Violating the HQL Requirement is a misdemeanor punishable by up to five years in jail and a $10,000 fine. Md. Code Ann., Pub. Safety § 5-144. Firearms dealers also face mandatory revocation of their dealer's license. *Id*. § 5-114(b)(2).

The HQL Requirement's burdens have deterred tens of thousands of law-abiding, responsible Maryland citizens, including the Individual Plaintiffs, many of MSI's members, and hundreds of Atlantic Guns' customers, from acquiring a handgun. *Compare* JA0927 *with* JA0934, JA0938 & JA0940; JA1872. Fewer handgun sales is the intended result of Maryland's long term effort to "restrict legal gun ownership" through "licensing and registration" so as to "constrain the supply of guns." JA1706; JA0810 (then-Attorney General published a report with the stated

9

"goal" of "ridding our homes and communities of handguns through restrictive handgun licensing").

## SUMMARY OF ARGUMENT

The HQL Requirement burdens conduct indisputably protected by the Second Amendment by prohibiting law-abiding, responsible Maryland citizens without an HQL from exercising their right to acquire a handgun for self-defense in their homes. It is a novel restriction without support in our Nation's historical tradition of firearm regulation.

Obtaining an HQL is burdensome. It requires much more than a background check and a positive identification of the prospective purchaser. To apply for an HQL, Marylanders must submit their fingerprints to the Maryland State Police and complete a half day of classroom instruction as well as a live-fire exercise. Marylanders must then wait up to 30 days (and oftentimes longer) for the Maryland State Police to conduct a background check and approve or deny the HQL application. During this waiting period, Maryland bans its law-abiding, responsible citizens from purchasing, renting, or receiving a handgun. The HQL Requirement application process has deterred tens of thousands of law-abiding, responsible Marylanders from obtaining an HQL. Only after obtaining an HQL may Marylanders then apply to purchase a handgun by undergoing Maryland's pre-existing and still continuing 77R Handgun Registration Requirement process, which

10

requires purchasers to register their firearm, undergo another, redundant background check, and then wait another seven business days before finally acquiring their handgun.

Because the HQL Requirement burdens the right to acquire a handgun for self-defense in the home without a historical antecedent, the State cannot meet its burden of demonstrating that the HQL Requirement is consistent with this Nation's tradition of the right to keep and bear arms.

The District Court nevertheless upheld the constitutionality of the HQL Requirement under intermediate scrutiny. The District Court applied the incorrect legal analysis, which caused it to reach the incorrect conclusion. This Court should reverse the District Court's judgment, hold that the HQL Requirement violates the Second Amendment, and enter judgment for Plaintiffs.

## STANDARD OF REVIEW

The District Court's summary judgment ruling is reviewed de novo. *Kolbe*, 849 F.3d at 130. On summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## ARGUMENT

Historically, this Court reviewed a claim made under the Second Amendment using the "two-part approach." *Kolbe*, 849 F.3d at 133. The Supreme Court, in *New*

11

*York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), abrogated that

approach. The correct legal standard for reviewing a claim made under the Second

Amendment is:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Id*. at 2129–30 (citation and internal quotation marks omitted).

## I.   The District Court committed reversible error by upholding the HQL Requirement under means-end scrutiny, an incorrect legal standard.

### A.   Using an incorrect legal standard is reversible error.

It is reversible error for a district court to predicate its judgment on the

application of an incorrect legal standard. *See, e.g.*, *D.B. v. Cardall*, 826 F.3d 721,

743 (4th Cir. 2016) (district court erred by not applying *Mathews* factors in due

process case); *see also Billioni v. Bryant*, 759 F. App'x 144, 152 (4th Cir. 2019)

(district court erred by applying incorrect legal standard for determining whether

speech was protected under the First Amendment). In *Altizer v. Deeds*, 191 F.3d 540

(4th Cir. 1999), for instance, the district court granted summary judgment to a

prisoner in his suit against a prison warden by misapplying Supreme Court precedent

that in fact allowed the warden's behavior. *Id*. at 548. This Court reversed the district

12

court's decision because its judgment was predicated upon its application of an incorrect legal standard. *Id*. at 549–50.

**B.    The District Court committed reversible error by using an incorrect legal standard to uphold the HQL Requirement.**

   **1.  The Supreme Court has confirmed the text and history standard for analyzing Second Amendment challenges and rejected using means-end scrutiny.**

As noted above, the Supreme Court requires that when the text of the Second Amendment protects certain conduct, the "government must then justify its regulation by demonstrating that [the regulation] is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Bruen*, 142 S. Ct. at 2129–30; *see also District of Columbia v. Heller*, 554 U.S. 570, 576–625 (2008); *McDonald v. Chicago*, 561 U.S. 742, 790–91 (2010); *Caetano v. Massachusetts*, 577 U.S. 411, 412 (2016) (per curiam) (vacating and remanding where state supreme court failed to apply *Heller*'s and *McDonald*'s reasoning and analysis to a stun gun ban). "'Constitutional rights are enshrined with the scope they were understood to have when the people adopted them.'" *Bruen*, 142 S. Ct. at 2136 (quoting *Heller*, 554 U.S. at 634–635).The required standard "beg[ins] with a textual analysis focused on the normal and ordinary meaning of the Second Amendment's language." *Bruen*, 142 S. Ct. at 2127 (internal quotation omitted). If the conduct at issue is presumptively protected by the Second Amendment's text, the State has the

13

burden to "affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. The State must "identify a well-established and representative historical analogue to its regulation." *Id*. at 2133.

The Supreme Court expressly rejected applying means-end scrutiny generally, and intermediate scrutiny specifically: "Today, we decline to adopt that two-part approach. . . . Despite the popularity of this two-step approach, it is one step too many." *Bruen*, 142 S. Ct. at 2126–27. Means-end scrutiny is inappropriate because it allows courts to "defer to the determinations of legislatures." *Id*. at 2131. "[W]hile that judicial deference to legislative interest balancing is understandable—and, elsewhere, appropriate—it is not deference that the Constitution demands here." *Id*. *Bruen* reiterated *Heller*'s refusal "to engage in means-end scrutiny generally" and expressly rejected "the intermediate-scrutiny test that respondents and the United States now urge us to adopt." *Id*. at 2129.

### 2. The District Court upheld the HQL Requirement under means-end scrutiny.

The District Court upheld the HQL Requirement under intermediate scrutiny, applying an incorrect legal standard to grant of summary judgment to the State. JA1845, JA1870 ("I shall apply intermediate scrutiny . . . The State has shown all that is required: a reasonable, if not perfect, fit between the [HQL Requirement] and Maryland's interest in protecting public safety."). *Bruen* leaves no doubt that courts

14

may not use intermediate scrutiny to analyze a law burdening conduct protected by the Second Amendment. *Bruen*, 142 S. Ct. at 2126, 29–30. The District Court committed reversible error by doing just that.

### C.    This Court should decide the merits of this case and not remand to the District Court.

Prolonging this case with a remand is neither necessary nor appropriate because "the matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc*., 996 F.3d 243, 254 (4th Cir. 2021) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)); *see also U.S. v. Kin-Hong*, 110 F.3d 103, 116 (1st Cir. 1997) (recognizing an appellate court's "discretion to address issues not reached by the district court when the question is essentially legal and the record is complete" (citation omitted)). This Court disfavors remand when "[t]he issues have been fully briefed" and when deciding the issues may avoid "the possibility of another appeal." *See id*.

The analysis required by the Supreme Court is a legal inquiry that examines legal history, which is appropriately presented in the briefs. *See Bruen*, 142 S. Ct. at 2130 n.6 (noting that the historical inquiry presents "*legal* questions" that judges are capable of addressing) (emphasis in original); *see also id.* at 2135 n.8 (rejecting the dissent's suggestion that further fact-finding was needed and holding that its ruling

did not "depend on any of the factual issues raised by the dissent"). This Court may enter judgment for Plaintiffs because the relevant evidence (or the absence thereof) consists of legislative facts that are subject to judicial notice in this appeal and may be submitted in the State's brief. *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 558 (4th Cir. 2013) ("[O]rdinance[s] [themselves] and [their] legislative history [a]re legislative facts.") (citation omitted); *United States v. Gavegnano*, 305 F. App'x 954, 956 (4th Cir. 2009) (courts "may take judicial notice of legislative facts").

A remand will lead only to another appeal that will be reviewed de novo on the same evidence the parties will have presented in this appeal, further counseling against remand. *See, e.g., Morel v. Sabine Towing & Transp. Co., Inc*., 669 F.2d 345, 346 (5th Cir. 1982) ("The question presented is a matter of law and a remand solely for its consideration is neither in the interest of justice nor judicial economy."); *see also Boyes v. Shell Oil Prods. Co*., 199 F.3d 1260, 1266 n.13 (11th Cir. 2000) (choosing not to remand because issue would be decided de novo on appeal and stating that a remand would only delay resolution of the case).

This Court ultimately must determine as a matter of law whether the HQL Requirement is consistent with the Second Amendment's text and history. It should do so now.

16

## II.    The HQL Requirement violates the Second Amendment.

### A.    The HQL Requirement burdens conduct protected by the Second Amendment's plain text.

There is no dispute that the Second Amendment protects the right to acquire a handgun for self-defense in the home. *Heller* and *McDonald* "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense." *Bruen*, 142 S. Ct. at 2122; *see also Teixeira v. City of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc) ("the core Second Amendment right to keep and bear arms for self-defense 'wouldn't mean much' without the ability to acquire arms") (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011)); *Andrews v. State*, 50 Tenn. 165, 178 (1871) ("The right to keep arms, necessarily involves the right to purchase them … and to purchase and provide ammunition suitable for such arms."). Plaintiffs come within this right because they are or represent ordinary, law-abiding citizens who wish to acquire a handgun to possess in the home for self-defense. JA0022–0024. Atlantic Guns also comes within this right because it wishes to sell handguns to ordinary, law-abiding Maryland citizens and has standing to represent their rights as well as its own. JA1872–1873.

This Court has already held that the HQL Requirement burdens the right to acquire a handgun for self-defense in the home: "[T]he HQL requirement . . . limits [Atlantic Guns'] potential customer base," which includes individuals who "have

17

confirmed that they have been deterred from purchasing a handgun because of the HQL law." *Id*. at 208, 214 (internal quotations omitted); *see also id*. at 213 (noting that the State does not dispute that the HQL Requirement is a "burden[] on purchasing the plaintiff's goods"). Under the law of the case doctrine, this Court should again hold that the HQL Requirement burdens conduct protected by the Second Amendment. *United States v. Foster*, 526 F. App'x 268, 270 (4th Cir. 2013) ("As a practical matter, once the decision of an appellate court establishes the law of the case, it must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal.").

The District Court reached the same holding: "The HQL [Requirement] undoubtedly burden[s] th[e] core Second Amendment right because [it] make[s] it considerably more difficult for a person lawfully to acquire and keep a firearm for the purpose of self-defense in the home." JA1841 (internal quotations and citations omitted). And "Defendants do not deny that the HQL [Requirement] burden[s] conduct within the scope of the Second Amendment, namely the ability of a law-abiding citizen to attain a handgun for use in the home for self-defense." JA0055.

By its terms, the HQL Requirement prohibits those without an HQL from acquiring a handgun, mandating that "[a] person may purchase, rent, or receive a handgun only if the person . . . possesses a valid handgun qualification license issued to the person by the Secretary in accordance with this section." Md. Code Ann., Pub.

18

Safety, § 5-117.1(c). The HQL Requirement applies to commercial sales and private sales alike. *Id*. § 5-124. It sweeps broadly to include not merely a "purchase," but also the mere "receipt" of a handgun, including a gift to a family member. *See* JA0216.

The HQL Requirement also directly prohibits sales, rentals and transfers (including Plaintiff Atlantic Guns) to those without an HQL, mandating that "[a] dealer or any other person may not sell, rent, or transfer a handgun to a purchaser, lessee, or transferee unless the purchaser, lessee, or transferee presents to the dealer or other person a valid handgun qualification license issued to the purchaser, lessee, or transferee by the Secretary under this section." Md. Code Ann., Pub. Safety, § 5-117.1(b). This Court has already held that these sales, transfers, and rentals are protected by the Second Amendment. *See Maryland Shall Issue*, 971 F.3d at 214.

The effects of the HQL Requirement demonstrate its burden. *Compare* JA0927 *with* JA0934, JA0938 & JA0940; JA1872. The HQL Requirement has prevented tens of thousands of law-abiding, responsible Maryland citizens from acquiring a handgun. *Id*.

The HQL Requirement burdens conduct protected by the Second Amendment's plain text, and it is not a longstanding condition on the commercial sale of arms. Under *Heller*, "longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive

19

places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms" may be "presumptively lawful." 554 U.S. at 626–27 & n.26. *Bruen* clarified that the presumptively lawful "conditions and qualifications on the commercial sale of arms" must also be longstanding by noting that some "longstanding laws forbidding the carrying of firearms in sensitive places such as schools and government buildings" may be presumptively lawful. 142 S. Ct. at 2133 (internal quotations omitted).

The HQL Requirement is not a condition or qualification on the commercial sale of arms. "A condition or qualification on the sale of arms is a hoop someone must jump through to *sell* a gun, such as obtaining a license [to sell arms], establishing a lawful premise, or maintaining transfer records." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 416 (4th Cir.) (emphasis in original), *vacated as moot*, 14 F.4th 322 (4th Cir. 2021) (citing *United States v. Deeb*, 175 F.3d 1163, 1167–68 & n.8 (9th Cir. 1999) ("It is clear to us that the word 'sale' contained in all of these statutes and regulations refers only to sellers, not buyers.")). Regulations on firearm purchasers (or recipients) are not "conditions and qualifications to sell arms." *Id*.

This Court's holding in *United States v. Hosford*, 843 F.3d 161 (4th Cir. 2016), is also instructive. There, this Court analyzed a regulation that required firearms dealers to obtain a license, holding that laws requiring sellers to meet some

20

qualification (or obtain some license) may be a condition or qualification on the sale of arms. 843 F.3d at 166–67 (analyzing 18 U.S.C. § 922(a)(1)(A)). That law placed no restrictions on those seeking to buy firearms. *Id*. Because the law imposed a hoop someone must jump through to sell a gun, it was a condition on the sale of firearms. *Id*.

In *Hirschfeld*, on the other hand, this Court held that laws requiring buyers to meet some qualification (or obtain some license) are not conditions or qualifications on the sale of arms. In *Hirschfeld*, this Court analyzed a law that prohibited firearms dealers "from selling handguns and handgun ammunition to 18-, 19-, and 20-year-olds." 5 F.4th at 417 (analyzing 18 U.S.C. § 922(b)(1), (c)(1)). That law was "a functional prohibition on buyers, not a mere condition or qualification on sellers." *Id*. Accordingly, it was not a condition on the sale of firearms and therefore not presumptively lawful. *Id*.

Like the law at issue in *Hirschfeld*, the HQL Requirement functions to burden purchasers—not only sellers.[2] Just as the law at issue in *Hirschfeld* burdened a group of purchasers (young adults) from acquiring handguns by prohibiting firearms dealers from selling them handguns, the HQL Requirement burdens a group of purchasers (those without an HQL) from acquiring handguns by prohibiting firearms

---

[2] This is true even though firearms dealers like Atlantic Guns have suffered economic injury as a result of the HQL Requirement.

21

dealers from selling them handguns. *Maryland Shall Issue*, 971 F.3d at 212 ("the HQL requirement undoubtedly constrains Atlantic Guns' ability to sell handguns and limits its potential customer base"). Unlike the law at issue in *Hosford*, the HQL Requirement does not require firearms dealers to obtain a license or jump through some other hoop to sell handguns.

Nor, for the reasons discussed *supra* at III.B., is the HQL Requirement longstanding. *See also Heller v. District of Columbia*, 670 F.3d 1244, 1255 (D.C. Cir. 2011) ("*Heller II*") (holding that "law[s] that are more akin to licensing the gun owner than to registering the gun are also novel," including requirements "that an applicant demonstrate knowledge about firearms, be fingerprinted and photographed, [and] take a firearms training or safety course"). The State cannot meet its burden to demonstrate that the HQL Requirement is both a condition on the sale of handguns and longstanding. The HQL Requirement is therefore presumptively unconstitutional.

Because the HQL Requirement burdens conduct protected by the Second Amendment, the State has the burden to "justify [Maryland's] regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2126 (quotation omitted); *see also id*. at 2150 ("Of course, we are not obliged to sift the historical materials for evidence to sustain New

York's statute. That is respondents' burden."). The State has not met this burden and cannot do so.

**B.    The State cannot demonstrate that the HQL Requirement is consistent with this Nation's historical tradition of firearm regulation.**

**1.    The HQL Requirement is a novel attempt at solving a centuries-old general societal problem.**

The historical analysis required by the Supreme Court often proves "fairly straightforward" and "simple." *Bruen*, 142 S. Ct. at 2131–32. The historical analysis is straightforward when, for instance, "a challenged regulation addresses a general societal problem that has persisted since the 18th century, the lack of a distinctly similar historical regulation addressing that problem is relevant evidence that the challenged regulation is inconsistent with the Second Amendment." *Id*. at 2131. The historical analysis is also straightforward when "the Founders themselves could have adopted [a 'distinctly similar' historical regulation to the challenged law] to confront that problem" but did not. *Id*. "Likewise, if earlier generations addressed the societal problem, but did so through materially different means, that also could be evidence that a modern regulation is unconstitutional." *Id*.

*Heller* and *Bruen* "exemplifie[d] this kind of straightforward historical inquiry." *Bruen*, 142 S. Ct. at 2131. Both examined laws enacted to remedy centuries-old problems. Both found that those laws lacked a historical analogue. Both, accordingly, struck those laws as unconstitutional.

23

In *Heller,* the District of Columbia law at issue "addressed a perceived societal problem—firearm violence in densely populated communities" by banning handgun possession in the home. *Bruen*, 142 S. Ct. at 2131. Although "the Founders themselves could have adopted [a similar law] to confront that problem," they did not. *Id*. In striking down the District of Columbia's ban, the Supreme Court found it dispositive that no "Founding-era historical precedent" banned handgun possession in the home. *Id*.

*Bruen* examined New York's proper cause requirement for obtaining a carry permit, which "concern[ed] the same alleged societal problem addressed in *Heller*: handgun violence, primarily in urban area[s]." *Bruen*, 142 S. Ct. at 2131. (quotation omitted). In striking down New York's proper cause requirement, the Supreme Court deemed it controlling that the law lacked an analogue from "before, during, and even after the Founding." *Id*. at 2131–32.

The constitutionality of the HQL Requirement presents a similarly straightforward historical analysis. It concerns the same alleged centuries-old societal problem at issue in both *Heller* and *Bruen*: violence involving the use of a handgun, primarily in urban areas. *See* JA0083–0089, JA0112–0120. It also has the same amount of historical support as the laws struck down in both *Heller* and *Bruen*: none.

24

It is indisputable both that violence involving handguns is a centuries-old societal problem and that there is no historical regulation distinctly similar to the HQL Requirement. At the time of the Founding, the preferred means of addressing the threat of violence was to require law-abiding individuals to be armed. States "typically required that arms be brought to churches or to all public meetings," and "statutes required arms carrying when traveling or away from home." *See* D. Kopel & J. Greenlee, *The "Sensitive Places" Doctrine*, 13 Charleston L. Rev. 205, 232 (2018) (cited with approval in *Bruen*, 142 S. Ct. at 2133). Yet, "[u]ntil the early twentieth century, there were no laws that required that individuals receive government permission before purchasing or borrowing a firearm." David Kopel, *Background Checks for Firearms Sales and Loans: Law, History, and Policy* ("Kopel"), 53 Harv. J. on Legis. 303, 336 (2016).[3]

The State may argue, incorrectly, that the few, basic permit-to-purchase laws enacted in the early- to mid-20th century provide the necessary historical support for the HQL Requirement. That would be wrong for two reasons. First, laws from the early 20th century are outside of the Nation's historical tradition and, second, these permit-to-purchase laws enacted in the early- to mid-20th century are not "distinctly similar" to the HQL Requirement. *See Bruen*, 142 S. Ct. at 2131.

---

[3] The only exceptions were the limits placed on possession by slaves and freemen by some southern States (including Maryland), as well as in the "Black Codes" that were enacted after the Civil War. *See* Kopel, at 336–39.

25

On the first point, *Bruen* made clear that laws first appearing in the 20th century are "late-in-time" and are not part of the relevant historical record. 142 S. Ct. at 2154, n.28 ("We will not address any of the 20th-century historical evidence brought to bear by respondents or their amici."). These laws provide even less insight than laws enacted "75 years after the ratification of the Second Amendment," which themselves "do not provide as much insight into its original meaning as earlier sources." *Id*. at 2137 (quoting *Heller*, 554 U.S. at 614 (citing *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc*., 554 U.S. 269, 312 (Roberts, C. J., dissenting) ("The belated innovations of the mid- to late-19th-century courts come too late to provide insight into the meaning of [the Constitution in 1787]")). This is especially true where these late-in-time laws "contradict[] earlier evidence." *Bruen*, 142 S. Ct. at 2154 n.28. And even if modern laws alone could demonstrate a broad tradition of a regulation, there must at least be a strong showing that such laws are common in the states, *i.e.*, many more than six states. *See Kennedy v. Louisiana*, 554 U.S. 407, 423–26 (2008) (only six states permitting death penalty for child rapists shows national consensus against it).

The State's amicus support below confirms the lack of a historical analogue for the HQL Requirement. In support of the State's motion for summary judgment, Everytown for Gun Safety submitted an amicus brief that canvassed the historical record to "provide historical context, social science, and doctrinal analysis that might

26

otherwise be overlooked." Brief for Everytown for Gun Safety as Amicus Curiae Supporting Defendants, Maryland Shall Issue v. Hogan (No. 1:16-cv-03311), ECF 129 ("Everytown's Amicus Brief"), at 2. Everytown's admission that "[t]he relevant history here dates back to at least the early twentieth century, when state legislatures began requiring permits to purchase guns," *id*. at 6, demonstrates the absence of meaningful historical support for the HQL Requirement. By the early- to mid-20th century, nine states had enacted some form of a permit-to-purchase law. Kopel, at 343–61 (collecting statutes). Two were repealed and one was declared void, leaving six still-standing permit-to-purchase laws. *Id*.

Further, "[p]ost-ratification adoption or acceptance of laws that are inconsistent with the original meaning of the constitutional text obviously cannot overcome or alter that text." *Bruen*, 142 S. Ct. at 2137 (quotation omitted). The HQL Requirement does precisely this by contradicting the Founding-era laws that required young men eligible for militia service to undergo routine militia training, some of which was focused on firearms. At the time of the Founding, no training was required to acquire a handgun or other firearm. Unlike the HQL Requirement, militia training was not a prerequisite to firearm ownership. Instead, these militia laws required firearm ownership *prior* to militia training. For instance, the Militia Act of 1792 (enacted one year after the Bill of Rights was adopted) required a militiaman to "*provide himself* with a good musket or firelock" and that he "shall

27

appear *so armed, accoutered, and provided* when called out to exercise." Act of May 8, 1792, Second Congress, Sess. 1, ch. 33, § 1, 1 Stat. 271 (emphases added). The states' requirements were no different. New Jersey, for instance, required its militiamen to "assemble, properly armed and accoutered." 1778 N.J. Sess. Laws 21, at 42, 46 §§ 14-15. Delaware, too, required its militiamen to "at his own expense, provide himself . . . with a Musket or Firelock with a bayonet" before showing up for militia training. 1782 Del. Sess. Laws, at 3 § 6; *see also* 1786 N.C. Sess. Laws, at § VI, at 409 (same); 1791 S.C. Sess. Laws, at 17 (same). No state required militia training *before* it permitted its citizens to acquire a firearm. *See Heller II*, 670 F.3d at 1253, 1255 & n.* (firearms training—as well as classroom orientations and fingerprinting—"are . . . novel," not "deeply . . . rooted in our history," and "not longstanding").

Second, these permit-to-purchase laws from the early- to mid-20th century are not distinctly similar to the HQL Requirement. Only two states required fingerprints (Michigan, 1927; New York, 1931). Everytown's Amicus Brief, at 8. Prior to these fingerprinting requirements, only Oregon required prospective purchasers to verify their identity to the State—through two affidavits from landowners who could attest to the purchaser's "good moral character." 1913 Or. Laws 497, ch. 256 § 1. Oregon's law was repealed 12 years later. 1925 Or. Laws 468, ch. 260. No state required a

classroom orientation or live-fire requirement or allowed a State to take 30 days to grant permission to purchase. *See* Kopel, at 343–61 (collecting statutes).

There is no national standard remotely akin to the HQL Requirement. A small minority of states have a permit-to-purchase law, and the HQL Requirement is uniquely burdensome even among this minority. Currently, only 13 states require a permit-to-purchase.[4] *See* <u>Exhibit 1</u> (collecting and describing each of these laws). Of those 13 states, four (Michigan, Nebraska, Illinois, and North Carolina) require only a background check of the purchaser. *Id*. Rhode Island requires only a short classroom orientation. *Id*. New York and New Jersey require only fingerprints. *Id*. Connecticut and California require only firearms orientation and training. *Id*.

Only Maryland and Hawaii impose a live-fire requirement for a permit-to-purchase. *See* Exhibit 1. Maryland's live-fire requirement is especially burdensome in the urban areas of Maryland where counties have, by ordinance, banned discharge of firearms except at established firing ranges, which in turn are privately owned and few in number, to say nothing of lack of access by public transportation. *See* JA0602–0607. Maryland's fingerprinting requirement is also uniquely burdensome because it mandates that fingerprints be taken only at State-approved, private "live-scan" vendors, which are not found in rural areas of the State. *See* JA1725.

---

[4] Owner Responsibilities – Licensing, Giffords Law Center, https://giffords.org/lawcenter/gun-laws/policy-areas/owner-responsibilities/licensing/#footnote_12_5608 (last visited Aug. 1, 2022).

The fingerprint requirement is particularly insidious because it requires an applicant to be permanently registered within the State's criminal database. Maryland thus requires its citizens who wish to exercise their Second Amendment right to acquire a handgun to give up their Fourth Amendment right to be free from warrantless searches and seizures. *See, e.g.*, *Johnson v. VanderKooi*, No. 160958, 2022 WL 2903868, at *10 (Mich. July 22, 2022) (practice of fingerprinting individuals without probable cause or a warrant is unconstitutional); *cf Maryland v. King*, 569 U.S. 435, 463 (2013) (cheek swab did not violate Fourth Amendment only because individual was already detained with probable cause for commission of a serious crime). The exercise of the Second Amendment right to acquire a handgun cannot be conditioned on the surrender of Fourth Amendment rights. *See, e.g.*, *Simmons v. United States*, 390 U.S. 377, 393–394 (1968) (it is "intolerable that one constitutional right should have to be surrendered in order to assert another").

Of the states with more than a nominal permit-to-purchase law, Connecticut's was enacted the earliest, in 1995—more than 200 years after the Founding. Mark Gius, *Effects of Permit-to-Purchase Laws on State-Level Firearm Murder Rates*, 45 Int'l Econ. J. 73, 76 (2017). This is well past the time frame for firearms regulations rejected by the Supreme Court in *Bruen*; these restrictions are therefore not historical analogues to the HQL Requirement.

A straightforward historical analysis demonstrates that the HQL Requirement is inconsistent with the historical tradition of the Second Amendment. The State cannot prove the contrary.

### 2. Even if the HQL Requirement were meant to address an unprecedented societal problem or dramatic technological change, it lacks a relevantly similar historical analogue.

*Bruen* noted that when a challenged law addresses an "unprecedented societal concern[]" or involves "dramatic technological changes," the historical analysis may be less straightforward. 142 S. Ct. at 2132. In these instances, "th[e] historical inquiry that courts must conduct will often involve reasoning by analogy." *Id*. at 2132. "[D]etermining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id*. (quoting C. Sunstein, On Analogical Reasoning, 106 Harv. L. Rev. 741, 773 (1993)). The controlling "metric" remains "whether modern and historical regulations impose a comparable burden on the right of armed self-defense, and second, whether that regulatory burden is comparably justified." *Id*. at 2133. This inquiry "does not mean that courts may engage in independent means-end scrutiny under the guise of an analogical inquiry." *Id*. at 2133 n.7.

Neither handguns nor their acquisition by responsible, law-biding citizens present an unprecedented societal concern or dramatic technological change.

31

"[H]andguns were introduced in England during the Tudor and early Stuart eras" and have been in commerce ever since. *Bruen*, 142 S. Ct. at 2140 (noting that "Henry VIII issued several proclamations decrying the proliferation of handguns" because they "threatened Englishmen's proficiency with the longbow"). Nor does the HQL Requirement regulate some new technological change in handgun transfers, if such a thing even exists; it instead comprehensively regulates all handgun sales, receipts, rentals and transfers—online or otherwise.

But even if the acquisition of handguns did present some unprecedented societal concern or dramatic technological change, the State cannot meet its burden to demonstrate a historical regulation that is a proper analogue to the HQL Requirement. The 20th century permit-to-purchase requirements are not part of the historical tradition of firearm regulations, nor are they relevantly similar to the HQL Requirement. The Founding Era militia training requirements are undoubtedly part of the historical tradition of firearm regulations, and they demonstrate that no classroom orientation or firearm training was required to first acquire a firearm, confirming the ahistorical nature of the HQL Requirement.

The HQL Requirement burdens conduct that is protected by the Second Amendment. It has no support in the historical tradition of the Second Amendment. Indeed, it contradicts that historical tradition. It is therefore unconstitutional.

32

## CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that this Court reverse the judgment of the District Court and remand the case with instructions to enter judgment for Plaintiffs.

Respectfully submitted,

/s/ Cary J. Hansel, III
Cary J. Hansel, III
2514 N. Charles Street
Baltimore, MD 21218
Phone: 301-461-1040
Facsimile: 443-451-8606
cary@hansellaw.com

Mark W. Pennak
Maryland Shall Issue, Inc.
9613 Harford Rd.
Ste. C #1015
Baltimore, MD 21234
Phone: 301-873-3671
m.pennak@me.com

Counsel for Appellants

/s/ John Parker Sweeney
John Parker Sweeney
James W. Porter, III
Marc A. Nardone
Connor M. Blair
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-393-7150
Facsimile: 202-347-1684
jsweeney@bradley.com

Counsel for Appellant Atlantic Guns, Inc.

33

## REQUEST FOR ORAL ARGUMENT

Appellants hereby request oral argument before this Court.

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 28(e)(2)(a) because this brief contains fewer than 13,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(viii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Dated: August 3, 2022.

/s/ John Parker Sweeney
John Parker Sweeney
Counsel for Appellant Atlantic Guns Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of August, Appellants' brief was served, via electronic delivery, to all parties' counsel via the Court's appellate CM/ECF system which will forward copies to Counsel of Record.

/s/ John Parker Sweeney
John Parker Sweeney

# ADDENDUM

USCA4 Appeal: 21-2017     Doc: 24-1     Filed: 08/03/2022     Pg: 54 of 65

§ 5-117.1. Handgun qualification license required to sell,..., MD PUBLIC SAFETY...

West's Annotated Code of Maryland
 Public Safety (Refs & Annos)
  Title 5. Firearms (Refs & Annos)
   Subtitle 1. Regulated Firearms (Refs & Annos)

MD Code, Public Safety, § 5-117.1

§ 5-117.1. Handgun qualification license required to sell, rent, or transfer handguns

Effective: October 1, 2013
Currentness

**Application of section**

(a) This section does not apply to:

(1) a licensed firearms manufacturer;

(2) a law enforcement officer or person who is retired in good standing from service with a law enforcement agency of the United States, the State, or a local law enforcement agency of the State;

(3) a member or retired member of the armed forces of the United States or the National Guard; or

(4) a person purchasing, renting, or receiving an antique, curio, or relic firearm, as defined in federal law or in determinations published by the Bureau of Alcohol, Tobacco, Firearms and Explosives.

**Handgun qualification license required for purchaser, lessee, or transferees**

(b) A dealer or any other person may not sell, rent, or transfer a handgun to a purchaser, lessee, or transferee unless the purchaser, lessee, or transferee presents to the dealer or other person a valid handgun qualification license issued to the purchaser, lessee, or transferee by the Secretary under this section.

**Requirements for purchase, rent, or receipt of handguns**

(c) A person may purchase, rent, or receive a handgun only if the person:

(1)(i) possesses a valid handgun qualification license issued to the person by the Secretary in accordance with this section;

(ii) possesses valid credentials from a law enforcement agency or retirement credentials from a law enforcement agency;

(iii) is an active or retired member of the armed forces of the United States or the National Guard and possesses a valid military identification card; or

USCA4 Appeal: 21-2017    Doc: 24-1    Filed: 08/03/2022    Pg: 55 of 65

§ 5-117.1. Handgun qualification license required to sell,..., MD PUBLIC SAFETY...

(iv) is purchasing, renting, or receiving an antique, curio, or relic firearm, as defined in federal law or in determinations published by the Bureau of Alcohol, Tobacco, Firearms and Explosives; and

(2) is not otherwise prohibited from purchasing or possessing a handgun under State or federal law.

### Issuance of handgun qualification license

(d) Subject to subsections (f) and (g) of this section, the Secretary shall issue a handgun qualification license to a person who the Secretary finds:

(1) is at least 21 years old;

(2) is a resident of the State;

(3) except as provided in subsection (e) of this section, has demonstrated satisfactory completion, within 3 years prior to the submission of the application, of a firearms safety training course approved by the Secretary that includes:

(i) a minimum of 4 hours of instruction by a qualified handgun instructor;

(ii) classroom instruction on:

1. State firearm law;

2. home firearm safety; and

3. handgun mechanisms and operation; and

(iii) a firearms orientation component that demonstrates the person's safe operation and handling of a firearm; and

(4) based on an investigation, is not prohibited by federal or State law from purchasing or possessing a handgun.

### Exemptions from firearms safety training course requirements

(e) An applicant for a handgun qualification license is not required to complete a firearms safety training course under subsection (d) of this section if the applicant:

(1) has completed a certified firearms training course approved by the Secretary;

USCA4 Appeal: 21-2017    Doc: 24-1       Filed: 08/03/2022    Pg: 56 of 65

§ 5-117.1. Handgun qualification license required to sell,..., MD PUBLIC SAFETY...

(2) has completed a course of instruction in competency and safety in the handling of firearms prescribed by the Department of Natural Resources under § 10-301.1 of the Natural Resources Article;

(3) is a qualified handgun instructor;

(4) is an honorably discharged member of the armed forces of the United States or the National Guard;

(5) is an employee of an armored car company and has a permit issued under Title 5, Subtitle 3 of this article; or

(6) lawfully owns a regulated firearm.

**Applications to Central Repository for State and national criminal history records check**

(f)(1) In this subsection, "Central Repository" means the Criminal Justice Information System Central Repository of the Department of Public Safety and Correctional Services.

(2) The Secretary shall apply to the Central Repository for a State and national criminal history records check for each applicant for a handgun qualification license.

(3) As part of the application for a criminal history records check, the Secretary shall submit to the Central Repository:

(i) a complete set of the applicant's legible fingerprints taken in a format approved by the Director of the Central Repository and the Director of the Federal Bureau of Investigation;

(ii) the fee authorized under § 10-221(b)(7) of the Criminal Procedure Article for access to Maryland criminal history records; and

(iii) the mandatory processing fee required by the Federal Bureau of Investigation for a national criminal history records check.

(4) The Central Repository shall provide a receipt to the applicant for the fees paid in accordance with paragraph (3)(ii) and (iii) of this subsection.

(5) In accordance with §§ 10-201 through 10-234 of the Criminal Procedure Article, the Central Repository shall forward to the applicant and the Secretary a printed statement of the applicant's criminal history information.

(6) Information obtained from the Central Repository under this section:

(i) is confidential and may not be disseminated; and

USCA4 Appeal: 21-2017    Doc: 24-1    Filed: 08/03/2022    Pg: 57 of 65

§ 5-117.1. Handgun qualification license required to sell,..., MD PUBLIC SAFETY...

(ii) shall be used only for the licensing purpose authorized by this section.

(7) If criminal history record information is reported to the Central Repository after the date of the initial criminal history records check, the Central Repository shall provide to the Department of State Police Licensing Division a revised printed statement of the applicant's or licensee's State criminal history record.

**Application form and fee**

(g) An applicant for a handgun qualification license shall submit to the Secretary:

(1) an application in the manner and format designated by the Secretary;

(2) a nonrefundable application fee to cover the costs to administer the program of up to $50;

(3)(i) proof of satisfactory completion of:

1. a firearms safety training course approved by the Secretary; or

2. a course of instruction in competency and safety in the handling of firearms prescribed by the Department of Natural Resources under § 10-301.1 of the Natural Resources Article; or

(ii) a valid firearms instructor certification;

(4) any other identifying information or documentation required by the Secretary; and

(5) a statement made by the applicant under the penalty of perjury that the applicant is not prohibited under federal or State law from possessing a handgun.

**Issuance or denial of handgun qualification license**

(h)(1) Within 30 days after receiving a properly completed application, the Secretary shall issue to the applicant:

(i) a handgun qualification license if the applicant is approved; or

(ii) a written denial of the application that contains:

1. the reason the application was denied; and

USCA4 Appeal: 21-2017    Doc: 24-1    Filed: 08/03/2022    Pg: 58 of 65

§ 5-117.1. Handgun qualification license required to sell,..., MD PUBLIC SAFETY...

2. a statement of the applicant's appeal rights under subsection (l) of this section.

(2)(i) An individual whose fingerprints have been submitted to the Central Repository, and whose application has been denied, may request that the record of the fingerprints be expunged by obliteration.

(ii) Proceedings to expunge a record under this paragraph shall be conducted in accordance with § 10-105 of the Criminal Procedure Article.

(iii) On receipt of an order to expunge a fingerprint record, the Central Repository shall expunge by obliteration the fingerprints submitted as part of the application process.

(iv) An individual may not be charged a fee for the expungement of a fingerprint record in accordance with this paragraph.

### Expiration of license

(i) A handgun qualification license issued under this section expires 10 years from the date of issuance.

### Renewal of license

(j)(1) The handgun qualification license may be renewed for successive periods of 10 years each if, at the time of an application for renewal, the applicant:

(i) possesses the qualifications for the issuance of the handgun qualification license; and

(ii) submits a nonrefundable application fee to cover the costs to administer the program up to $20.

(2) An applicant renewing a handgun qualification license under this subsection is not required to:

(i) complete the firearms safety training course required in subsection (d)(3) of this section; or

(ii) submit to a State and national criminal history records check as required in subsection (f) of this section.

### Revocation of license

(k)(1) The Secretary may revoke a handgun qualification license issued or renewed under this section on a finding that the licensee no longer satisfies the qualifications set forth in subsection (d) of this section.

(2) A person holding a handgun qualification license that has been revoked by the Secretary shall return the license to the Secretary within 5 days after receipt of the notice of revocation.

USCA4 Appeal: 21-2017    Doc: 24-1    Filed: 08/03/2022    Pg: 59 of 65

§ 5-117.1. Handgun qualification license required to sell,..., MD PUBLIC SAFETY...

**Hearing upon denial or revocation of license**

(l)(1) A person whose original or renewal application for a handgun qualification license is denied or whose handgun qualification license is revoked, may submit a written request to the Secretary for a hearing within 30 days after the date the written notice of the denial or revocation was sent to the aggrieved person.

(2) A hearing under this section shall be granted by the Secretary within 15 days after the request.

(3) A hearing and any subsequent proceedings of judicial review under this section shall be conducted in accordance with Title 10, Subtitle 2 of the State Government Article.

(4) A hearing under this section shall be held in the county of the legal residence of the aggrieved person.

**Lost or stolen licenses**

(m)(1) If an original or renewal handgun qualification license is lost or stolen, a person may submit a written request to the Secretary for a replacement license.

(2) Unless the applicant is otherwise disqualified, the Secretary shall issue a replacement handgun qualification license on receipt of a written request and a nonrefundable fee to cover the cost of replacement up to $20.

**Regulations**

(n) The Secretary may adopt regulations to carry out the provisions of this section.

**Credits**
Added by Acts 2013, c. 427, § 1, eff. Oct. 1, 2013.

Notes of Decisions (6)

MD Code, Public Safety, § 5-117.1, MD PUBLIC SAFETY § 5-117.1
Current through legislation effective through July 1, 2022, from the 2022 Regular Session of the General Assembly. Some statute sections may be more current, see credits for details.

---

End of Document © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Code of Maryland Regulations
    Title 12. Department of Public Safety and Correctional Services
      Subtitle 15. Criminal Justice Information System Central Repository
        Chapter 05. Use of Private Provider Services for Non-Criminal Justice Purposes (Refs & Annos)

COMAR 12.15.05.05

.05. Private Provider Business Location Requirements.

Currentness

A. Before the Central Repository enters into a private provider agreement with or issues an original or renewal authorization certificate to a private provider, the Central Repository shall review a private provider's location plan.

B. A private provider's location plan, at a minimum, shall have:

    (1) A Livescan machine that is approved by the Central Repository;

    (2) A waiting area that, at a minimum, includes:

      (a) A reception desk; and

      (b) Seating for individuals requesting a criminal history records check;

    (3) A method of securing and maintaining records that meets Central Repository requirements; and

    (4) Electronic connections, electric power supply, and office climate control that meet manufacturer and Central Repository requirements.

Complete through Maryland Register Vol. 49, Issue 10 dated May 20, 2022. Some sections may be more current, see credits for details.

COMAR 12.15.05.05, MD ADC 12.15.05.05

**End of Document**                                    © 2022 Thomson Reuters. No claim to original U.S. Government Works.

Code of Maryland Regulations
    Title 29. Department of State Police
        Subtitle 03. Weapons Regulations
            Chapter 01. Regulated Firearms (Refs & Annos)

COMAR 29.03.01.29

.29. Handgun Qualification License -Training Requirement.

Currentness

A. Except as provided in §B of this regulation, an applicant shall complete a Firearms Safety Training Course and submit a Firearms Safety Training Certificate issued by a Qualified Handgun Instructor. The submission of the Firearms Safety Training Certificate shall constitute proof that the applicant satisfactorily completed a Firearms Safety Training Course.

B. An applicant does not need to complete a Firearms Safety Training Course if the applicant:

(1) Has satisfactorily completed a firearms training course approved by the Secretary as an exemption from the Firearms Safety Training Course;

(2) Has satisfactorily completed a course of instruction in competency and safety in the handling of firearms as prescribed by the Department of Natural Resources under Natural Resources Article, §10-301.1, Annotated Code of Maryland;

(3) Is a Qualified Handgun Instructor in accordance with Regulation .37 of this chapter;

(4) Is an honorably discharged member of the armed forces of the United States or the National Guard;

(5) Is a former law enforcement officer of the State or a local law enforcement agency in the State who has successfully completed initial law enforcement training;

(6) Is an employee of an armored car company and has a permit issued under Public Safety Article, Title 5, Subtitle 3, Annotated Code of Maryland; or

(7) Lawfully owns a regulated firearm.

C. A Firearms Safety Training Course shall consist of a minimum of 4 hours of instruction by a Qualified Handgun Instructor and include the following minimum curricula.

(1) State Firearm Law. Overview of the State firearm laws, including discussion of what constitutes a regulated firearm, how to properly purchase or transfer a firearm, where allowed to carry or transport a firearm, when necessary to possess a carry permit, and who is prohibited from possessing firearms.

(2) Home Firearm Safety. Overview of handgun and firearm safety in the home, including discussion of access to minors, locking and storing of firearms, and use of safety devices, such as secure lock boxes.

(3) Handgun Mechanisms and Operation. Overview of the proper operation and safe handling of a handgun, including cleaning and maintenance, the loading and unloading of ammunition, and the differences between revolvers and semi-automatic handguns.

(4) Operation and Handling Demonstration. Orientation that demonstrates the applicant's safe operation and handling of a firearm, including a practice component in which the applicant safely fires at least one round of live ammunition.

Complete through Maryland Register Vol. 49, Issue 10 dated May 20, 2022. Some sections may be more current, see credits for details.

COMAR 29.03.01.29, MD ADC 29.03.01.29

**End of Document**                          © 2022 Thomson Reuters. No claim to original U.S. Government Works.

USCA4 Appeal: 21-2017     Doc: 24-1     Filed: 08/03/2022     Pg: 63 of 65

Amendment II. Keeping and Bearing Arms, USCA CONST Amend. II

United States Code Annotated
   Constitution of the United States
      Annotated
         Amendment II. Keeping and Bearing Arms

U.S.C.A. Const. Amend. II

Amendment II. Keeping and Bearing Arms

Currentness

A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

Notes of Decisions (644)

U.S.C.A. Const. Amend. II, USCA CONST Amend. II
Current through P.L. 117-161. Some statute sections may be more current, see credits for details.

**End of Document**           © 2022 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2022 Thomson Reuters. No claim to original U.S. Government Works.     1

United States Code Annotated
  Constitution of the United States
    Annotated
      Amendment XIV. Citizenship; Privileges and Immunities; Due Process; Equal Protection; Apportionment of
      Representation; Disqualification of Officers; Public Debt; Enforcement

U.S.C.A. Const. Amend. XIV

AMENDMENT XIV. CITIZENSHIP; PRIVILEGES AND IMMUNITIES; DUE PROCESS; EQUAL PROTECTION;
APPOINTMENT OF REPRESENTATION; DISQUALIFICATION OF OFFICERS; PUBLIC DEBT; ENFORCEMENT

Currentness

**Section 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Section 2.** Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

**Section 3.** No person shall be a Senator or Representative in Congress, or elector of President and Vice President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

**Section 4.** The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

**Section 5.** The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.

<Section 1 of this amendment is further displayed in separate documents according to subject matter,>

<see USCA Const Amend. XIV, § 1-Citizens>

<see USCA Const Amend. XIV, § 1-Privileges>

<see USCA Const Amend. XIV, § 1-Due Proc>

<see USCA Const Amend. XIV, § 1-Equal Protect>

<sections 2 to 5 of this amendment are displayed as separate documents,>

<see USCA Const Amend. XIV, § 2,>

<see USCA Const Amend. XIV, § 3,>

<see USCA Const Amend. XIV, § 4,>

<see USCA Const Amend. XIV, § 5,>


U.S.C.A. Const. Amend. XIV, USCA CONST Amend. XIV
Current through P.L. 117-161. Some statute sections may be more current, see credits for details.

**End of Document**                                      © 2022 Thomson Reuters. No claim to original U.S. Government Works.