No. 21-2017 (L)

**In the
United States Court of Appeals
for the Fourth Circuit**

**MARYLAND SHALL ISSUE, *et al.*,**
Plaintiffs-Appellants

v.

**LAWRENCE HOGAN, *et al.*,**
Defendants-Appellees

On Appeal from the United States District Court
for the District of Maryland
No. 1:16-cv-03311-ELH (Hon. Ellen L. Hollander)

**REPLY BRIEF OF APPELLANTS**

Cary J. Hansel, III
2514 N. Charles Street
Baltimore, MD 21218
Phone: 301-461-1040
Facsimile: 443-451-8606
cary@hansellaw.com

Mark W. Pennak
Maryland Shall Issue, Inc.
9613 Harford Rd.
Ste. C #1015
Baltimore, MD 21234
Phone: 301-873-3671
m.pennak@me.com

Counsel for Appellants

John Parker Sweeney
James W. Porter, III
Marc A. Nardone
Connor M. Blair
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-393-7150
Facsimile: 202-347-1684
jsweeney@bradley.com

Counsel for Appellant Atlantic Guns, Inc.

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. i

TABLE OF AUTHORITIES ........................................................ iii

INTRODUCTION ......................................................................... 1

ARGUMENT .................................................................................. 3

    I.    The State does not dispute the dispositive facts demonstrating that the HQL Requirement is unconstitutional under *Bruen*'s required standard. ............................................................................ 3

        A.    The State does not dispute that the HQL Requirement burdens conduct protected by the Second Amendment............ 3

        B.    The State fails to demonstrate that the HQL Requirement is consistent with this Nation's historical tradition of firearm regulation...................................................... 6

            1.  The State does not dispute that the HQL Requirement fails the fairly straightforward, simple historical inquiry............. 6

            2.  The State does not dispute that the HQL Requirement fails the more nuanced historical inquiry. .................................. 8

        C.    The State fails to demonstrate that the HQL Requirement is presumptively lawful.......................................................... 10

            1.  The HQL Requirement is not a ban on felons or the mentally ill from possessing firearms................................ 11

            2.  The HQL Requirement is not a carry licensing scheme..... 14

    II.    The HQL Requirement is not constitutional just because it might advance public safety. ...................................................... 17

    III.    The HQL Requirement imposes unnecessary burdens on the right to acquire a handgun for possession in the home............................. 20

CONCLUSION .............................................................................. 22

CERTIFICATE OF COMPLIANCE ........................................... 24

CERTIFICATE OF SERVICE ................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Ent. Merchants Ass'n,*
  564 U.S. 786 (2011)...................................................................19

*Cox v. New Hampshire,*
  312 U.S. 569 (1941)....................................................................4

*District of Columbia. v. Heller,*
  554 U.S. 570 (2008)..............................................................*passim*

*Frein v. Penn. State Police,*
  47 F.4th 247 (3d Cir. 2022) .......................................................5

*Hamilton v. Pallozzi,*
  848 F.3d 614 (4th Cir. 2017) ...............................................12, 13

*Heller v. District of Columbia,*
  670 F.3d 1244 (D.C. Cir. 2011)..............................................5, 9, 14

*Heller v. District of Columbia,*
  801 F.3d 264 (D.C. Cir. 2015)......................................................4

*Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives,*
  5 F.4th 407 (4th Cir. 2021) ........................................................13

*Kachalsky v. Cnty. of Westchester,*
  701 F.3d 81 (2d Cir. 2012) .........................................................18

*Maryland Shall Issue, Inc. v. Hogan,*
  971 F.3d 199 (4th Cir. 2020) ........................................................4

*Moore v. Madigan,*
  702 F.3d 933 (7th Cir. 2012) .......................................................16

*New York State Rifle & Pistol Association, Inc. v. Bruen,*
  142 S. Ct. 2111 (2022)...........................................................*passim*

*Nunn v. State*,
  1 Ga. 243 (1846) ...................................................................................10

*Verisign, Inc. v. XYZ.com LLC*,
  848 F.3d 292 (4th Cir. 2017) ...............................................................20

**Statutes**

18 U.S.C. § 922(g) ........................................................................................12

18 U.S.C. § 922(s)(1)(A)(II) .........................................................................21

18 U.S.C. § 922(s)(3)(A) ..............................................................................21

Md. Code Ann., Health-General § 10-101(i)(2) .........................................12

Md. Code Ann., Pub. Safety § 5-117 ........................................................9, 17

Md. Code Ann., Pub. Safety § 5-117.1(c) ....................................................17

Md. Code Ann., Pub. Safety § 5-117.1(c)(2) ...............................................12

Md. Code Ann., Pub. Safety § 5-133 ...........................................................12

Md. Code Ann., Pub. Safety § 5-133(b) .......................................................12

Md. Code Ann., Pub. Safety § 5-204.1(c) ....................................................21

Md. Code Ann., Pub. Safety § 5-303 ...........................................................17

Md. Code Ann., Pub. Safety § 5-306 ...........................................................17

**Other Authorities**

David Kopel, *Background Checks for Firearms Sales and Loans:
  Law, History, and Policy*, 53 Harv. J. on Legis. 303 (2016) ....................8

U.S. Const. amend. II ..........................................................................*passim*

## INTRODUCTION

The State's brief confirms that there is no dispute of the dispositive issues demonstrating that the HQL Requirement violates the Second Amendment. The State agrees that the HQL Requirement burdens conduct protected by the Second Amendment: the right of "the people" to acquire a handgun for lawful purposes such as self-defense in the home. The State also agrees that, under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), it has the burden to demonstrate that the HQL Requirement is consistent with this Nation's historical tradition of firearm regulation. The State does not dispute that it cannot meet its burden. It does not dispute that the HQL Requirement is a novel attempt to fix a centuries old problem. Nor does it present a historical analogue to the HQL Requirement. The HQL Requirement therefore violates the Second Amendment.

Because the dispositive issues are undisputed, the State instead argues in support of two Maryland laws that Apellants do not challenge in this lawsuit: Maryland's ban on prohibited individuals from possessing firearms (Md. Code Ann., Pub. Safety § 5-133(b)) and Maryland's carry license scheme (*id*. § 5-306). The State first asks this Court to hold incorrectly that the HQL Requirement is presumptively lawful as a ban on firearm possession by felons (or "dangerous individuals") and the mentally ill. This argument is contrary to the HQL Requirement's plain language and demonstrated consequences. The HQL Requirement plainly and indisputably

burdens nearly all Maryland citizens' right to acquire a handgun for self-defense in their homes and has deterred tens of thousands of them from doing so.

The State then asks this Court to hold incorrectly that the HQL Requirement is presumptively lawful in the same way a shall issue regulation of the right to carry a handgun outside the home might be. This argument is again contrary to the plain language of the HQL Requirement, which burdens acquiring a handgun for possession in the home and is entirely independent from Maryland's carry license regime. Laws burdening carrying arms outside the home are not relevantly similar to laws burdening acquisition of arms for possession in the home, so burdens on carrying arms outside the home, even if they are presumptively lawful, are not representative of burdens on acquisition of arms for possession in the home.

The State finally asks this Court to uphold the HQL Requirement under an analysis that is strikingly similar to means-end scrutiny, arguing that the HQL Requirement does not severely burden the right to acquire a handgun and advances public safety. *Bruen* expressly rejected this argument, prohibiting courts from upholding a law that burdens conduct protected by the Second Amendment just because it might (or even does) advance public safety.

The State does not dispute that this Court should decide the merits of this case without first remanding it, even though the State also does not dispute that the

2

District Court committed reversible error by upholding the HQL Requirement under an incorrect legal standard.

## ARGUMENT

### I. The State does not dispute the dispositive facts demonstrating that the HQL Requirement is unconstitutional under *Bruen*'s required standard.

*Bruen* mandates a clear standard for analyzing Second Amendment challenges: "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 142 S. Ct. at 2126. "To justify its regulation, the government may not simply posit that the regulation promotes an important interest. Rather, the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*. "Only if a firearm regulation is consistent with this Nation's historical tradition may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id*. (quotation marks omitted)

### A. The State does not dispute that the HQL Requirement burdens conduct protected by the Second Amendment.

The State agrees that the Second Amendment's plain text covers the conduct at issue here: the right of law-abiding, responsible citizens to acquire a handgun for self-defense in the home. *See* Opp., at 15, 31. The State does not argue that this

conduct is outside the scope of the Second Amendment's protections.[1] It has never "den[ied] that the HQL [Requirement] burden[s] conduct within the scope of the Second Amendment, namely the ability of a law-abiding citizen to attain a handgun for use in the home for self-defense." *See* JA55; *see also Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 213 (4th Cir. 2020). The State's agreement is in accord with this Court's and the District Court's holdings. *Maryland Shall Issue*, 971 F.3d at 208, 214; JA1841. Nor does the State argue that this Court should reverse its prior holding that the HQL Requirement burdens conduct protected by the Second Amendment.

Though the State agrees that the HQL Requirement burdens protected conduct, it downplays this burden as a mere "administrative burden," akin to a permit to hold a parade on a public street or the 77R Requirement already imposed by the State and not at issue here. Opp., at 27–28 (citing *Cox v. New Hampshire*, 312 U.S. 569 (1941) (upholding requirement that citizens who wish to hold a parade on a public street first "specify the day and hour of the permit to perform or exhibit, or of such parade, procession or open-air public meeting" and obtain a permit from a government official); *Heller v. District of Columbia*, 801 F.3d 264, 273 (D.C. Cir. 2015) ("*Heller III*") (upholding handgun registration)). The State then argues that

---

[1] Nor does the State dispute that Atlantic Guns also comes within this right by wishing to sell handguns to ordinary, law-abiding Maryland citizens and has standing to represent their rights as well as its own.

"the validity of an administrative regulation is judged by evaluating whether it (1) enacts a new substantive limitation on who may exercise the right, or (2) establishes an administrative burden that any otherwise-eligible person may overcome." Opp., at 29. This standard finds no support in *Bruen* and is contrary to it.

Bruen confirmed that the severity of the HQL Requirement's burdens (which are certainly not small) is beside the point. Courts may not account for "how close the law comes to the core of the Second Amendment right and the severity of the law's burden on that right." *Bruen*, 142 S. Ct. at 2126; *see also Frein v. Penn. State Police*, 47 F.4th 247, 254 (3d Cir. 2022) ("The Supreme Court recently instructed us to closely scrutinize all gun restrictions for a historically grounded justification."). In any event, even before *Bruen* was decided, "the district court focused on the administrative requirements of the HQL scheme and concluded that they 'undoubtedly burden the core Second Amendment right because they make it considerably more difficult for a person lawfully to acquire and keep a firearm . . . for the purpose of self-defense in the home.'" Opp., at 13 (quoting District Court's Memorandum Opinion, which quoted *Heller v. District of Columbia*, 670 F.3d 1244, 1255 (D.C. Cir. 2011) ("*Heller II*") (alteration omitted)). *Bruen* also allows no distinction between types of burdens—administrative, substantive, or otherwise.

That the HQL Requirement burdens conduct protected by the Second Amendment is undisputed. The State therefore must demonstrate that the HQL

5

Requirement is consistent with this Nation's historical tradition of firearm regulation.

**B.     The State fails to demonstrate that the HQL Requirement is consistent with this Nation's historical tradition of firearm regulation.**

The HQL Requirement is inconsistent with this Nation's historical tradition of firearm regulation under either of the historical inquiries approved by the Supreme Court: (1) the "fairly straightforward" and "simple" inquiry used to analyze firearm laws, like the HQL Requirement, that address "a general societal problem that has persisted since the 18th century"; and (2) the "more nuanced" inquiry used to analyze firearm laws "implicating unprecedented societal concerns or dramatic technological changes." *Bruen*, 142 S. Ct. at 2131–32. The State fails to demonstrate that the HQL Requirement satisfies either historical inquiry.

**1.     The State does not dispute that the HQL Requirement fails the fairly straightforward, simple historical inquiry.**

The fairly straightforward and simple historical inquiry requires that a law be struck as unconstitutional when it lacks "a distinctly similar historical regulation addressing that problem." *Bruen*, 142 S. Ct. at 2131. This inquiry applies here because, as *Bruen* and *District of Columbia v. Heller*, 554 U.S. 570 (2008), both demonstrate and as the State confirms, the HQL Requirement is a novel attempt to remedy the perceived centuries-old societal problem of violence involving the use of handguns, primarily in urban areas. *See* Opening Br., at 24–25.

6

Both *Heller* and *Bruen* considered 20th century laws enacted to curb handgun violence, primarily in urban areas. The District of Columbia law at issue in *Heller* was something "the Founders themselves could have adopted . . . to confront that problem." *Bruen*, 142 S. Ct. at 2131. But they did not. *Id*. Likewise, the law at issue in *Bruen*, which "concern[ed] the same alleged societal problem addressed in *Heller*: 'handgun violence,' primarily in 'urban area[s],'" lacked an analogue from "before, during, and even after the Founding." *See id*. at 2131–32.

The State confirms that the HQL Requirement was enacted as an attempt to remedy handgun violence in urban areas, admitting that the HQL Requirement was enacted to "reduce murder rates" by "reduc[ing] . . . the flow of [hand]guns to criminals" and "dangerous or irresponsible individuals," Opp., at 3, 9, 15, and has "drastically reduced firearm homicide rates in large urban counties with the exception of Baltimore City" and "is associated with a significant reduction in the number of handguns that have been diverted to criminals in Baltimore soon after retail purchase," Opp., at 9.

The State does not dispute that the Founders could have adopted a licensing requirement similar to the HQL Requirement but did not do so. The HQL Requirement lacks a historical analogue from before, during, and even after the Founding. "Until the early twentieth century, there were no laws that required that individuals receive government permission before purchasing or borrowing a

firearm." David Kopel, *Background Checks for Firearms Sales and Loans: Law, History, and Policy* ("Kopel"), 53 Harv. J. on Legis. 303, 336 (2016). A straightforward historical analysis demonstrates that the HQL Requirement is inconsistent with the historical tradition of the Second Amendment, and the State fails to demonstrate the contrary.

### 2. The State does not dispute that the HQL Requirement fails the more nuanced historical inquiry.

The State does not suggest that the more nuanced historical inquiry applies here. Nor could it, because it is undisputed that neither handguns nor their acquisition by responsible, law-abiding citizens present an unprecedented societal concern or dramatic technological change. *See* Opening Br., at 31–32.

The more nuanced historical inquiry requires that a law be struck as unconstitutional when it lacks "a well-established and representative historical analogue." *Bruen*, 142 S. Ct. at 2133. Historical laws may serve as analogues when they are "relevantly similar" to the challenged law, meaning they "impose a comparable burden on the right of armed self-defense and whe[n] that burden is comparably justified." *Id*. at 2132. The "how and why [the potential historical analogue] burden[s] a law-abiding citizen's right to armed self-defense" must be comparable to the challenged law. *Id*. at 2133.

The State presents no well-established and representative historical analogue to the HQL Requirement as a whole. The State argues only that one part of the HQL

8

Requirement—the firearm safety course—has a historical analogue: "At the time of the Founding, most men had to participate in their State's militia. And, consistent with the English tradition, mandatory training obligations came with this militia service." Opp., at 34 (citing four states' militia laws).

The militia laws relied upon by the State and the HQL Requirement are not relevantly similar to the HQL Requirement because their hows and whys are not comparable. As an initial matter, they do not even burden the same right: Militia laws did not burden the right to acquire a firearm to possess in the home for self-defense. Whereas the HQL Requirement requires nearly everyone to complete the firearm safety course *before* acquiring a handgun, Md. Code Ann., Pub. Safety § 5-117, Militia laws required militia training only *after* the militia men had acquired a handgun or other firearm, *see* Opening Br., at 27–28. No state required militia training before firearm acquisition or tied this training to firearm acquisition. *See Heller II*, 670 F.3d at 1293 (Kavanaugh, J., dissenting) (discussing militia requirements). Militia-style training certainly was not required as part of any permit-to-purchase regime like the HQL Requirement.

Even if Founding Era militia laws imposed a burden on the exercise of early-Americans' Second Amendment right to acquire a firearm, the HQL Requirement and Founding Era militia laws were not imposed for similar purposes. Maryland enacted the HQL Requirement to encourage safer gun storage practices in the home

and reduce handgun violence in urban areas. *See* Opp., at 8–11, 42–47. Militia laws, by contrast, were enacted to train young men for military service so they would be prepared for armed defense against foreign or domestic threats. *Heller*, 554 U.S. at 598.

Militia laws are also inapposite here because the Second Amendment "guarantees the individual right to possess and carry weapons in case of confrontation that does not depend on service in the militia." *Bruen*, 142 S. Ct. at 2127 (internal quotation to *Heller* omitted). Militia laws did not condition the exercise of anyone's right to acquire a firearm on compliance with the militia requirements. In any event, the militia laws applied only to men of a certain age. But at the time of the Founding, firearm acquisition was not limited to these men. *See Heller*, 554 U.S. at 612 (the Second Amendment protects the rights of "the whole people . . . and not militia only") (quoting *Nunn v. State*, 1 Ga. 243, 251 (1846)). The State does not suggest any other law is a historical analogue to the HQL Requirement.

### C.     The State fails to demonstrate that the HQL Requirement is presumptively lawful.

Unable to meet its burden of demonstrating that the HQL Requirement is consistent with this Nation's historical tradition of firearm regulation, the State argues in support of two laws that are not at issue here: Maryland's prohibitions on the possession of firearms by prohibited individuals (felons and the mentally ill) and

requirements for obtaining a license to carry a firearm outside the home. Both of the State's arguments fail.

### 1. The HQL Requirement is not a ban on felons or the mentally ill from possessing firearms.

The State first attempts to squeeze the HQL Requirement into *Heller*'s narrow dicta that "longstanding prohibitions on the possession of firearms by felons and the mentally ill" do not violate the Second Amendment. *See, e.g.*, *Heller*, 554 U.S. at 626. The narrowness of this dicta is underscored by the relief ordered in *Heller*— that petitioner "obtain a license, assuming he is not otherwise disqualified, [which he will be qualified for] if he is not a felon and is not insane." *Id*. at 631.

The HQL Requirement does not fit within *Heller*'s dicta because it is a not prohibition on firearm possession by felons and the mentally ill. It is instead a mandatory license that nearly every law-abiding, responsible Maryland citizen must obtain before acquiring a handgun, burdening the Second Amendment rights of those who indisputably are "part of 'the people' whom the Second Amendment protects." *Bruen*, 142 S. Ct. at 2134. Handgun Licenses are not available to felons or the mentally ill, Md. Code Ann., Pub. Safety § 5-117.1(c)(2), but that does not convert the HQL Requirement into a presumptively lawful ban on those individuals from possessing firearms.

Maryland already has a law prohibiting felons or the mentally ill from acquiring handguns. Md. Code Ann., Pub. Safety § 5-133(b). Individuals that have

11

been convicted "of a disqualifying crime," diagnosed as "suffer[ing] from [certain] mental disorder[s]" (as defined in Md. Code Ann., Health-General § 10-101(i)(2)), or "involuntarily committed to a facility" are subjected to Section 5-133's prohibition. Unlike the HQL Requirement, Section 5-133(b) on its face and in practice does not apply to law-abiding, responsible citizens. It does not burden their Second Amendment rights. And it does not deter them from acquiring a handgun. That law is not relevant to this case, and Appellants do not challenge it here.

This Court has confirmed that the HQL Requirement is fundamentally different than Maryland's ban on firearm possession by felons and the mentally ill. In *Hamilton v. Pallozzi*, 848 F.3d 614 (4th Cir. 2017), this Court addressed the constitutionality of "Maryland's regulatory scheme for firearm ownership," a scheme that includes both Maryland's possession ban and HQL Requirement. *Id*. at 618. The Court upheld Maryland's possession ban, Section 5-133(b), as analogous to the similar federal ban, 18 U.S.C. § 922(g), which other courts had upheld as presumptively lawful. *Id*. at 622–23. The Court did not analogize the HQL Requirement to the federal ban and did not suggest the HQL Requirement is presumptively lawful. *See id*.

Who the HQL Requirement deters from acquiring a handgun further demonstrates that it is not a prohibition on felons and the mentally ill but an unconstitutional burden on the law-abiding and responsible. Although many have

12

tolerated the HQL Requirement's burdens and delays to obtain a Handgun License, *see* Opp., at 7–8, the State does not dispute that the HQL Requirement has deterred tens of thousands of law-abiding, responsible Maryland citizens from doing so. *Compare* JA927 *with* JA934, JA938, JA940. Maryland, through the HQL Requirement's burdens and delays, has denied these law-abiding, responsible Maryland citizens their right to acquire a handgun.

Nor are the HQL Requirement's burdens "longstanding," and the State does not argue that they are. This Court and *Bruen* are clear that a challenged regulation must be "both [enumerated in *Heller*'s dicta] and longstanding to be presumptively valid" because "the sentence in *Heller* makes clear that 'longstanding' serves as a modifier of part or all of the sentence." *Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives*, 5 F.4th 407, 418 (4th Cir.), *vacated as moot on other grounds*, 14 F.4th 322 (4th Cir. 2021); *see also Bruen,* 142 S. Ct. at 2133 (same). The HQL Requirement was enacted in 2013. Its historical underpinnings stretch back to, at their very earliest, the early 20th century. It is not longstanding for the reasons set forth on pages 22–23 of Appellants' Opening Brief and not disputed by the State. *See also Heller II*, 670 F.3d at 1255 (holding that "law[s] that are more akin to licensing the gun owner than to registering the gun are also novel," including requirements "that an applicant demonstrate knowledge about firearms, be fingerprinted and photographed, [and] take a firearms training or safety course").

13

## 2.  The HQL Requirement is not a carry licensing scheme.

The State next attempts to twist the HQL Requirement to fit into *Bruen*'s dicta that tacitly approved laws regulating the carrying of handguns outside the home in "'shall issue' jurisdictions." 142 S. Ct. at 2123. Those carry licensing schemes "often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *Id*. at 2138 n.9.

*Bruen* cited the carry licensing schemes in each of the 43 states to which it tacitly approved, and the HQL Requirement was not among them. *Id*. at 2123 n.1. *Bruen* did not suggest that carry licensing schemes were relevantly similar to permit-to-purchase laws like the HQL Requirement. To the contrary, the *Bruen* majority limited its findings to *bearing* arms, which the HQL Requirement does not regulate. *E.g.*, *Bruen*, 142 S. Ct. at 2138 n.9. Justice Kavanaugh in his concurrence made clear that "the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." *Id*. at 2161 (Kavanaugh, J., concurring). Justice Kavanaugh did not mention, much less approve of, carry licensing schemes for mere permits to purchase.

The State does not argue that the carry licensing schemes discussed approvingly in *Bruen* are well-established and representative historical analogues to

the HQL Requirement. They are not, because they do not impose a comparable burden on the right at issue and because their burdens are not comparably justified.

The carry licensing schemes at issue in *Bruen* do not impose a comparable burden—or any burden at all—on the right to acquire a handgun. *Heller* and *Bruen* make clear that bearing arms and keeping arms, though protected equally, are different rights to be analyzed under different sets of history, tradition, and precedent. *Compare Heller*, 554 U.S. at 604–35 (analyzing the history, tradition, and precedent establishing and regulating the right to keep arms) *with Bruen*, 142 S. Ct. at 2134–56 (analyzing a different history, tradition, and precedent establishing and regulating the right to bear arms). Burdens on carrying arms outside the home are not representative of burdens on the right to acquire a handgun.

The carry licensing schemes discussed approvingly in *Bruen* are also not well-established and representative historical analogues to the HQL Requirement because their burdens are not comparably justified. Carrying arms outside the home in case of confrontation entails different public safety risks than acquiring arms for possession in the home. "A gun is a potential danger to more people if carried in public than just kept in the home." *Moore v. Madigan*, 702 F.3d 933, 937 (7th Cir. 2012). For that reason, "the right to keep and bear arms *in public* has traditionally been subject to well-defined restrictions governing the intent for which one could

carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms." *Bruen*, 142 S. Ct. at 2138 (emphasis added).

Simply acquiring a handgun for possession in the home, on the other hand, does not entail the same risks to public safety because "[m]ost gun owners do not wear a holstered pistol at their hip in their bedroom or while sitting at the dinner table." *See Bruen*, 142 S. Ct. at 2134. Not only this, but the need for armed self-defense is "most acute" in the home, and the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 628, 635. For these reasons, there is no history of restrictions on the right to acquire a firearm for self-defense in the home that are analogous to the carry licensing schemes discussed approvingly in *Bruen*.

The State's argument that the HQL Requirement is necessary to "ensure only that those *bearing* arms in the jurisdiction are, in fact, law-abiding, responsible citizens," Opp., at 23 (quoting *Bruen*, 142 S. Ct. at 2138 n.9) (emphasis added), is nonsensical. The HQL Requirement applies only to handgun acquisitions, including acquisitions for possession and self-defense in the home. Maryland has another, independent set of laws regulating the carrying of firearms. Md. Code Ann., Pub. Safety §§ 5-303, 5-306. Maryland's carry licensing scheme requires individuals to obtain a different license separate and apart from the Handgun License. *Compare id.* § 5-117.1(c) (requiring a license issued "in accordance with this section), *with id.* §

16

5-303 (requiring a "permit issued under this subtitle"). A Handgun License under Section 5-117 does not permit individuals to carry outside the home, and a carry license under Section 5-303 does not permit individuals to acquire a handgun.

## II.    The HQL Requirement is not constitutional just because it might advance public safety.

The State shirks *Bruen*'s required standard and argues that the HQL Requirement survives intermediate scrutiny: "the minimal administrative burdens imposed are substantially related to fulfilling the State's interest in [advancing public safety]." Opp., at 15. But *Bruen* rejected means-end scrutiny generally (and intermediate scrutiny specifically) as improper under the standard for analyzing Second Amendment challenges. "*Heller* and *McDonald* do not support applying means-end scrutiny in the Second Amendment context. Instead, the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127. "Not only did *Heller* decline to engage in means-end scrutiny generally, but it also specifically ruled out the intermediate-scrutiny test that respondents and the United States now urge us to adopt." *Id*. at 2129. "The government may not simply posit that the regulation promotes an important interest." *Id*. at 2126. It instead "must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id*.

17

Evidence that a challenged law advances public safety does not "justify granting States greater leeway in restricting firearm ownership and use." *Id*. at 2126 n.3. The District of Columbia defended its handgun ban at issue in *Heller* by arguing that it advanced public safety. *See Heller*, 554 U.S. at 636. New York defended its "proper cause" rule at issue in *Bruen* by arguing the same. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 98 (2d Cir. 2012) (upholding the proper cause requirement). Both laws were unconstitutional because, like here, they were not rooted in the historical tradition of the Second Amendment. Their supposed public safety benefits were irrelevant to that analysis and therefore did not save those laws. *Heller*, 554 U.S. at 636; *Bruen*, 142 S. Ct. at 2127.

Nevertheless, the State, throughout its brief, extolls the supposed public safety benefits of the HQL Requirement. The State recounts the HQL Requirement's predicted public safety improvements, explaining why the General Assembly determined the HQL Requirement was a good policy choice. Opp., at 2–4 (quoting testimony from the State's experts and other law-enforcement personnel). The State also enumerates the supposed "public safety benefits of the [HQL Requirement]," diving into various "empirical studies," expert analyses, and say-so from various State employees of how and why the HQL Requirement has advanced public safety. Opp., at 8–11 & 42–47. The State then argues that "the burden imposed by the [HQL Requirement] is de minimis," "slight," and "insignificant." Opp., at 38–40.

18

The State's arguments are irrelevant under *Bruen*. The State balances the HQL Requirement's burdens and benefits together by arguing that the HQL Requirement's burdens "are substantially related to fulfilling the State's interest in ensuring that firearms are not acquired by dangerous or irresponsible individuals." Opp., at 15. The State's argument is effectively the two-step, intermediate scrutiny test expressly rejected in *Bruen*. 142 S. Ct. at 2129–30. As the Court explained, that two-step approach is "one step too many." *Id*. at 2127. *Bruen* requires this Court to reject the State's means-end scrutiny, "public safety" arguments out of hand. *Id*.

Even if this Court could analyze the HQL Requirement's supposed public safety benefits, the State fails to demonstrate that the HQL Requirement actually advances public safety. For example, the State argues that the "HQL Requirement led to drastically reduced firearm homicide rates in large urban counties with the exception of Baltimore City," Opp., at 9, but later admits that the HQL Requirement is merely "associated with a reduction in firearm homicide rates" (other than in Baltimore), Opp., at 44. That argument fails because it does not demonstrate that the HQL Requirement caused this decline. *See Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 800 (2011) (rejecting argument that violent video games cause harm to minors because argument was based on research showing mere "correlation, not evidence of causation" and had therefore "been rejected by every court to consider them"); *Verisign, Inc. v. XYZ.com LLC*, 848 F.3d 292, 298 (4th Cir. 2017) (affirming

19

disqualification of expert testimony where the expert's data pointed "only to correlation not causation"). Appellants' expert, Gary Kleck, explains: "It is unhelpful to phrase research results in associational language, saying that changes in handgun purchasing licensing laws were 'associated with' changes in firearms homicide or suicide." JA564.

### III. The HQL Requirement imposes unnecessary burdens on the right to acquire a handgun for possession in the home.

The State does not dispute that the Second Amendment protects the right to acquire a handgun and that the HQL Requirement burdens this right. Appellants do not challenge firearm licensing per se. Appellants challenge the HQL Requirement, specifically, because it burdens protected conduct and is not consistent with this Nation's historical tradition of firearm regulation. The State's argument that the HQL Requirement does not impose unnecessary burdens on that right is beside the point. *See supra* Section I.A–B. It is also not true.

The HQL Requirement's 30-day delay, fingerprint, and background check requirements are unnecessary to identify prohibited individuals from acquiring handguns because, as the State admits, the pre-existing 77R Handgun Registration already did so—in just seven days. Those requirements continue to apply to every handgun acquisition, even those taking place immediately after a prospective purchaser receives their Handgun License. *See* Opening Br., at 7; JA723.

The State has also confirmed that, prior to the HQL Requirement, it positively identified all 77R Handgun Registration applicants. JA719. All handgun purchasers must now undergo both the HQL Requirement's and the 77R Handgun Registration's burdens. But only the latter is necessary to positively identify a handgun purchaser and disarm those who subsequent to purchase become prohibited from possessing firearms. JA719. The State's expert confirmed that the background check done with the Handgun License application is "not materially different" from the subsequent point-of-purchase background check required by the 77R Handgun Registration. JA671–72. The fingerprinting requirement is also unnecessary for the State to locate and disarm handgun owners who are subsequently disqualified from handgun ownership because, as the State's expert admitted, the 77R Handgun Registration process already allows the State to do this. JA662–63.

Moreover, Maryland requires all handgun transfers go through a licensed firearm dealer. Md. Code Ann., Pub. Safety § 5-204.1(c). Federal law requires licensed firearm dealers to "verif[y] the identity of the transferee by examining the identification document presented." 18 U.S.C. § 922(s)(1)(A)(II). The identification must contain a photograph of the transferor, *id*. § 922(s)(3)(A), eliminating the possibility that Maryland is "vulnerable" to "individuals using false identification in their applications to purchase regulated firearms," Opp., at 3 (cleaned up).

21

The half-day, classroom training requirement is also unnecessary because, as the State admits, it teaches the same curricula as the one-hour, pre-recorded 77R Handgun Registration course requirement. JA753–54. The State concedes that there is no difference between the old and new courses' curricula except that the classroom format allows for questions and answers. JA754–57. But the State provides no evidence that there are any questions asked or answered in these training sessions, whether online or in person. In fact, the State provides no evidence that the training session provide any public safety benefit whatsoever. The State also provides no evidence that the live-fire requirement provides any public safety benefit. But it is undisputed that the live-fire requirement imposes an enormous burden on Handgun License applicants because ranges in urban Maryland are few in number. JA602. This burden is insurmountable in Baltimore City because there is no range at which a live round may be discharged legally. JA602–03, 607.

## CONCLUSION

For the reasons stated above and in Appellants' Opening Brief, Appellants respectfully request that this Court reverse the judgment of the District Court and remand the case with instructions to enter judgment for Plaintiffs.

Respectfully submitted,

/s/ Cary J. Hansel, III                           /s/ John Parker Sweeney
Cary J. Hansel, III                               John Parker Sweeney
2514 N. Charles Street                            James W. Porter, III
Baltimore, MD 21218                               Marc A. Nardone
Phone: 301-461-1040                               Connor M. Blair
Facsimile: 443-451-8606                           Bradley Arant Boult Cummings LLP
cary@hansellaw.com                                1615 L Street N.W., Suite 1350
                                                  Washington, D.C. 20036
                                                  Phone: 202-393-7150
Mark W. Pennak                                    Facsimile: 202-347-1684
Maryland Shall Issue, Inc.                        jsweeney@bradley.com
9613 Harford Rd.
Ste. C #1015
Baltimore, MD 21234                               Counsel for Appellant Atlantic Guns,
Phone: 301-873-3671                               Inc.
m.pennak@me.com


Counsel for Appellants

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains fewer than 6,500 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 in 14-point Times New Roman font.

Dated: November 16, 2022.


/s/ John Parker Sweeney
John Parker Sweeney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of November, Appellants' brief was served, via electronic delivery, to all parties' counsel via the Court's appellate CM/ECF system which will forward copies to Counsel of Record.

/s/ John Parker Sweeney
John Parker Sweeney