No. 21-2017

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

**MARYLAND SHALL ISSUE, INC.,** *et al.,*

*Plaintiffs-Appellants*,

**v.**

**WES MOORE,** *et al.,*

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the District of Maryland
(Ellen L. Hollander, District Judge)

_____

## RESPONSE OF APPELLANTS IN OPPOSITION
## TO PETITION FOR REHEARING EN BANC

_____

Cary J. Hansel, III
2514 N. Charles Street
Baltimore, MD 21218
Phone: 301-461-1040
cary@hansellaw.com

Mark W. Pennak
Maryland Shall Issue, Inc.
9613 Harford Rd., Suite C #1015
Baltimore, MD 21234
Phone: 301-873-3671
m.pennak@me.com

Counsel for Appellants

John Parker Sweeney
James W. Porter, III
Marc A. Nardone
Connor M. Blair
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-393-7150
jsweeney@bradley.com

Counsel for Appellant Atlantic Guns,
Inc.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION .............................................................................. 1

BACKGROUND ................................................................................ 2

ARGUMENT ...................................................................................... 5

    I.    The panel faithfully applied *Bruen*. ....................................... 5

    II.   *Bruen*'s dicta regarding shall-issue carry licensing regimes does not warrant en banc review. .................................................. 8

    III.  The panel decision does not have far-ranging implications for other firearms restrictions. ................................................. 14

CONCLUSION ................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Antonyuk v. Chiumento*,
    No. 22-2908, 2023 WL 8518003 (2d Cir. Dec. 8, 2023) ............................11, 12

*District of Columbia v. Heller*,
    554 U.S. 570 (2008).................................................................................2, 12, 13

*Dorce v. City of New York*,
    2 F.4th 82 (2d Cir. 2021) ....................................................................................4

*Maryland Shall Issue, Inc. v. Hogan*,
    971 F.3d 199 (4th Cir. 2020) ..........................................................................6, 7

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
    597 U.S. 1 (2022)........................................................................................*passim*

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992)............................................................................................9

*United States. v. Waddell*,
    412 Fed. App'x 577 (4th Cir. 2011) ...................................................................1

## Statutes

18 U.S.C. § 922(t) ........................................................................................................3

Md. Code Ann., Pub. Safety, § 5-117.1(c) ..................................................................3

Md. Code Ann., Pub. Safety § 5-117.1(f)....................................................................3

Md. Code Ann., Pub. Safety § 5-117.1(g) ...................................................................3

Md. Code Ann., Pub. Safety § 5-118 ...........................................................................4

Md. Code Ann., Pub. Safety § 5-120 ...........................................................................4

Md. Code Ann., Pub. Safety § 5-121 ...........................................................................4

Md. Code Ann., Pub. Safety § 5-123 ...........................................................................4

iii

Md. Code Ann., Pub. Safety § 5-124 ...................................................................4

Md. Code Ann., Pub. Safety § 5-301 *et seq* ......................................................2

2023 Maryland Session Laws Ch. 65 .................................................................15

**Other Authorities**

Fed. R. App. P. 35(a) ........................................................................................1

Fourth Cir. Loc. R. 35 ......................................................................................1

U.S. Const. amend. II .................................................................................*passim*

**INTRODUCTION**

"En banc consideration of appeals is disfavored, and therefore generally will not be ordered unless '(1) en banc consideration is necessary to secure or maintain uniformity of the court's decisions; or (2) the proceeding involves a question of exceptional importance.'" *United States v. Waddell*, 412 F. App'x 577, 578 (4th Cir. 2011) (unpublished) (quoting Fed. R. App. P. 35(a)); *see also* Loc. R. 35. The panel decision holding Maryland's Handgun Qualification License requirement ("HQL Requirement") unconstitutional presents neither of these prerequisites.

In *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), the Supreme Court set forth the required text and history standard that lower courts must apply when analyzing a Second Amendment challenge. Petitioners do not argue that the panel decision failed to faithfully apply *Bruen*'s text and history standard or that the HQL Requirement meets that standard. Instead, Petitioners argue that the panel decision conflicts with *Bruen*'s dicta that shall-issue licensing regimes for public carry of a handgun are not per se unconstitutional. But *Bruen* expressly limited that dicta to licenses to carry a concealed handgun outside the home. Petitioners mischaracterize the HQL Requirement as a licensing scheme "designed to ensure only **that those bearing arms** are, in fact, law-abiding, responsible citizens." Pet. at 13 (emphasis added). The HQL Requirement does not address public carry; it is a licensing scheme burdening the right to acquire a firearm for the home—where the

1

need for self-defense is "most acute." *District of Columbia v. Heller*, 554 U.S. 570, 628 (2008). The panel decision correctly held that the HQL Requirement does not fit within *Bruen*'s dicta.[1]

The panel decision also does not involve a question of exceptional importance. Petitioners take issue with the panel decision's holding that laws burdening conduct protected by the Second Amendment are presumptively unconstitutional. But that is exactly what *Bruen* commands and is precisely the standard of review applied in other constitutional contexts, such as challenges under the First or Fourteenth Amendments. Supreme Court precedent also makes clear that a law's purported public safety benefit is irrelevant to the constitutionality of a law, like the HQL Requirement, that burdens conduct protected by the Second Amendment. The HQL Requirement is an extreme outlier among the States, without a historic analogue, and redundant of Maryland's existing background check system that prevents prohibited persons from acquiring a handgun.

## BACKGROUND

The HQL Requirement imposes significant burdens on the exercise of the fundamental right to acquire a handgun for possession in the home. The HQL

---

[1] Maryland separately regulates who may carry a handgun outside the home, and that carry licensing regime is not at issue in this appeal. *See* Md. Code Ann., Pub. Safety § 5-301 *et seq*.

Requirement prohibits law-abiding, responsible Maryland citizens from acquiring a handgun unless they first apply for and obtain an HQL, which is a permit that allows the holder to thereafter apply to acquire a handgun for possession in the home, and undergo still another background check conducted by the Maryland State Police, Md. Code Ann., Pub. Safety, § 5-117.1(c), including the National Instant Criminal Background Check System (NICS), 18 U.S.C. § 922(t). To apply for an HQL, a Maryland citizen must submit: (1) an online application; (2) proof of completion of a half-day qualifying firearms safety course plus live-fire on a range; and (3) a complete set of electronic fingerprints from a State-approved live-scan private vendor. Md. Code Ann., Pub. Safety, § 5-117.1(f)–(g). The citizen must wait 30 days before receiving an HQL, during which time the Maryland State Police conducts a background check, including a NICS check.

Petitioners have conceded that the HQL Requirement is an additional layer on top of Maryland's 77R process, the existing, rigorous scheme that already ensures that prohibited persons may not acquire a handgun. At oral argument, Petitioners admitted that a person who receives an HQL cannot go to a store that sells handguns, purchase a handgun, and leave the store with it. Rather, the person must undergo still another background check conducted by the Maryland State Police, and it is that 77R background check that determines eligibility to possess a firearm, not the HQL. *Id.*

3

§§ 5-118, 5-120, 5-121 & 5-123. The 77R process is applicable to all handgun transfers, including gifts to friends and family and private sales. *Id.* § 5-124. Maryland imposes a 7-day waiting period for the 77R background check. *Id.* § 5-123(a). The HQL Requirement layers on additional delays, including 30 days to process an application, and the additional time to obtain fingerprints at a private vendor, classroom instruction, and live-fire on a range.

Petitioners conceded to the panel that the HQL Requirement burdens conduct protected by the Second Amendment, Appellee Br. at 38, and Petitioners do not deny that they must "meet their burden to identify an American tradition justifying" the HQL Requirement. Petitioners admitted at oral argument that no Founding-era laws "required advance permission" before a citizen could undergo still another background check to apply to purchase a firearm. The panel decision held that the HQL Requirement is not relevantly like the historical prohibitions on "dangerous" individuals owning firearms, Slip Op. at 14, and Petitioners presented no other historical evidence to support the HQL Requirement. Appellee Br. at 19–22.[2] *See, e.g.*, *Dorce v. City of New York*, 2 F.4th 82, 102 (2d Cir. 2021) (explaining that parties are "bound by concessions made by their counsel at oral argument").

---

[2] Judge Keenan, dissenting from the panel decision, would have remanded the case for the parties to discover historical sources to justify the HQL Requirement. Slip Op. at 23.

4

Rather than focusing on the dispositive text and history analysis, Petitioners argued instead that *Bruen*'s dicta regarding shall-issue carry license regimes saves the HQL Requirement. The panel rejected this argument. Slip Op. at 12 n.9. The panel reasoned that, "even if we stretch the Court's language to actually bless most shall-issue *public carry* regimes, this says little about shall-issue regimes that limit handgun possession altogether" because those two types of laws are not relevantly similar. *Id.* "So even if *Bruen* green-lighted similar but less burdensome restrictions, like some shall-issue carry regimes, we are still obligated to independently compare more burdensome restrictions, like shall-issue *possession* regimes, against the historical record." *Id.*

## ARGUMENT

### I.  The panel faithfully applied *Bruen*.

All parties agree that *Bruen* requires lower courts to apply a text and history standard when analyzing Second Amendment challenges:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command.

*Bruen*, 597 U.S. at 17 (citation and internal quotation marks omitted).

5

The required standard "beg[ins] with a textual analysis focused on the normal and ordinary meaning of the Second Amendment's language." *Id*. at 20 (cleaned up). If the conduct at issue is protected by the Second Amendment's text, the challenged law is presumed unconstitutional. *Id*. at 17. The State then has the burden to "identify a well-established and representative historical analogue" to its regulation. *Id*. at 30. If the State cannot meet its burden, the statute is unconstitutional. *Id*. at 34 ("Only if respondents carry that burden can they show that the pre-existing right codified in the Second Amendment, and made applicable to the States through the Fourteenth, does not protect petitioners' proposed course of conduct.").

Petitioners do not even argue that the panel decision misapplied *Bruen*'s required text and history standard. Nor do Petitioners suggest that the HQL Requirement could survive this standard. The Petition does not dispute that the Second Amendment's plain text and "unqualified command," *id.* at 17, covers the conduct burdened by the HQL Requirement—the right to acquire a handgun for possession in the home. Petitioners have never "den[ied] that the HQL [Requirement] burden[s] conduct within the scope of the Second Amendment, namely the ability of a law-abiding citizen to attain a handgun for use in the home for self-defense." *See* JA55; *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 213 (4th Cir. 2020), as amended (Aug. 31, 2020) (noting that the State does not dispute

that the HQL Requirement is a "burden[] on purchasing [Atlantic Gun]'s goods");
*see also* Appellee Br. at 15, 31.

Petitioners also do not try to justify the HQL Requirement as consistent with
the Nation's historical tradition of firearm regulation. Petitioners at oral argument
admitted that they had not identified any Founding-era laws that "required advance
permission" before a citizen could undergo a background check to be able to
purchase a firearm. Oral Arg., at 23:05–23:29 & 31:22–31:35. Nor had Petitioners'
briefing offered historical analogues from any other, less relevant era. *See* Appellee
Br. at 34–36.

Petitioners do not even argue that they could discover sufficient analogues
were the case to be remanded. They disavowed at oral argument the need for
additional discovery on remand because, as counsel admitted, "to the extent there's
evidence necessary to resolve the question, I think it's in the brief and in the record
below." *Id*. at 23:22–25:10; *id*. at 49:17–50:17 (arguing that a remand is not
necessary because "frankly, there's a robust record down below.").

Although Judge Keenan, dissenting from the panel decision, would have
remanded the case for the parties to discover historical sources to justify the HQL
Requirement, Slip Op. at 23, Petitioners disclaimed the need for remand during
argument and do not request such a remand in the Petition. Petitioners likewise do

not question the panel's holding that the HQL Requirement "infringes" a right protected by the text of the Second Amendment and thus do not endorse or adopt Judge Keenan's suggestion, *id.* at 30, that a factual inquiry into the extent of infringement was necessary. The panel disposed of that contention, *id.* at 11 n.8, and Petitioners do not dispute the panel's analysis.

Petitioners do not dispute that the panel reached the correct decision under *Bruen*'s required text and history standard. There is no dispute—and no doubt—that the panel opinion applied the text and history standard. Nor is there any dispute—or any doubt—that the text and history standard compelled the panel to hold that the HQL Requirement is unconstitutional. There is no need for this Court, sitting en banc, to reiterate those holdings.

## II. *Bruen*'s dicta regarding shall-issue carry licensing regimes does not warrant en banc review.

Petitioners' primary argument is that the panel decision failed to uphold the HQL Requirement under *Bruen*'s dicta in footnote nine that shall-issue carry licensing regimes are not per se unconstitutional. There is no suggestion in *Bruen* that all licensing regimes are per se constitutional so long as they lack a discretionary criterion, which is the argument Petitioners advance: "[T]he shall-issue discussion gives express approval to the very same requirements that are being challenged in this case . . . ." *See* Pet. at 15.

8

*Bruen* expressly disavowed such a reading: "we do not rule out constitutional challenges to shall-issue regimes." *Bruen*, 597 U.S. at 38 n.9. The Supreme Court already shut the door on the logically false premise upon which Petitioners' argument depends. The absence of discretion in a licensing regime does not establish that licensing regime's constitutionality. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 386 (1992) (holding that a law is not constitutional simply because it lacks one form of unconstitutional restriction out of several).

Petitioners compound their faulty logic by overextending *Bruen*'s carefully limited dicta, asserting that the HQL Requirement is included in *Bruen*'s discussion of shall-issue carry licensing regimes. That argument has no support in *Bruen*, which did not cite or discuss a single permit to purchase regime. *Bruen* did, however, cite the shall-issue carry permit laws in effect in 43 states throughout the country. *Bruen*, 597 U.S. at 15 n.1. The narrow scope of *Bruen*'s footnote nine dicta is further demonstrated by the fact it is appended to a sentence regarding carry-license regimes, stating there is no "historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Id*. at 38.

Contrary to Petitioners' assertion that "there is no indication that the Court's shall-issue discussion was limited to public-carry, as opposed to permit-to-purchase, regimes," Pet. at 15, *Bruen* defined exactly what it meant by "shall-issue" and "may-

9

issue" jurisdictions and carefully distinguished between the two, 597 U.S. at 13–14. Shall-issue jurisdictions are defined as those "where authorities must issue **concealed-carry licenses** whenever applicants satisfy certain threshold requirements[] without granting licensing officials discretion to deny licenses based on a perceived lack of need or suitability." *Id*. at 13 (emphasis added). May-issue jurisdictions, by contrast, are defined as those where "authorities have discretion to deny **concealed-carry licenses**." *Id*. at 14 (emphasis added). *Bruen* excluded handgun purchase licenses from its discussion of shall-issue licenses by limiting the definition of shall-issue to include only carry licenses.

*Bruen* hewed to these limiting definitions in footnote nine and throughout its opinion. "Because these licensing regimes do not require applicants to show an atypical need for armed self-defense, they do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Id*. at 38 n.9. "Additionally, some 'shall issue' jurisdictions have so-called 'constitutional carry' protections that allow certain individuals to carry handguns in public within the State without any permit whatsoever." *Id*. at 15. Consistent with these definitions, Justice Kavanaugh in his concurrence noted that "the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." *Id*. at 79 (Kavanaugh, J., concurring).

10

The United States Court of Appeals for the Second Circuit's recent decision in *Antonyuk v. Chiumento*, No. 22-2908, 2023 WL 8518003 (2d Cir. Dec. 8, 2023), is not to the contrary. *Antonyuk* upheld the "good moral character" requirement of New York's recently enacted carry license regime because the court found that this requirement was limited to persons who were objectively dangerous. *Id*. at *24. But *Antonyuk* recognized that *Bruen*'s dicta was limited to carry permits, observing that *Bruen* "approved of 'shall-issue' licensing regimes that deny firearms licenses to individuals who lack good moral character in the sense that they are not law-abiding and responsible and pose a danger to the community if licensed to carry firearms in public." *Id*.

*Antonyuk* mischaracterized the panel decision here as holding that "firearm licensing regimes based on a determination of 'dangerousness' are constitutionally impermissible." *Id*. at *23 n.24. This supposed holding, *Antonyuk* reasoned, was contrary to *Bruen*'s "clear guidance" that states may prohibit certain dangerous persons from exercising their right to keep and bear arms. *Id*.

The panel made no such holding. To the contrary, the panel acknowledged that States may disarm dangerous individuals because "the historical laws allegedly supporting a tradition of prohibiting dangerous people from owning firearms, all acted through one mechanism: punishing certain classes of supposedly 'dangerous'

11

people if they don't give up their arms or prove they are not dangerous." Slip op. at 17. The panel decision held that these laws do not justify the HQL Requirement, however, because the HQL Requirement burdens vastly more people insofar as it requires "*every* person [to] seek the government's permission before they can even acquire arms." *Id.* Any presumption that all persons are dangerous and thus may not exercise a constitutional right until they prove otherwise is both factually baseless and constitutionally unsustainable. Maryland's 77R process identifies prohibited persons and prevents them from obtaining handguns, and that process is not at issue. The panel decision and *Antonyuk* are not in conflict, and *Antonyuk* does not establish that the panel decision conflicts with *Bruen.*

The Supreme Court's shall-issue definition is limited to "concealed-carry licenses," *Bruen*, 597 U.S. at 13, and concerned only "these licensing regimes," *id.* at 38 n.9. Petitioners' assertion that *Bruen*'s footnote nine dicta was meant to apply broadly to all licensing schemes because *Bruen*'s holding "called into question the fundamental legitimacy of all aspects of licensing regimes generally," Pet. at 14, lacks any basis in *Bruen*. Petitioners ignore *Bruen*'s language that limits the application of both its holding and its footnote nine dicta to carry licensing schemes.

*Bruen*'s dicta simply does not address handgun acquisition licenses and does not govern the HQL Requirement. *Heller* and *Bruen* demonstrate that bearing arms

12

and keeping arms, though protected equally, are different rights to be analyzed under different sets of history, tradition, and precedent. *Heller* analyzed the history, tradition, and precedent that established and regulated **the right to keep arms**. *Heller*, 554 U.S. at 604–35. *Heller* also recognized that the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *id*. at 635, because the home is "where the need for defense of self, family, and property is most acute," *id*. at 628. *Bruen* analyzed different history, tradition, and precedent that established and regulated **the right to bear arms**. 597 U.S. at 31–70. There was very little overlap between the sources relied upon in *Heller* and *Bruen*.

Indeed, "the right to keep and bear arms in public has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances under which one could not carry arms." *Id*. at 38. Simply acquiring a handgun for possession in the home, on the other hand, is subject to a distinctly different analysis. *Id*. at 32. The HQL Requirement is entirely independent from Maryland's carry license regime.

The panel decision acknowledged *Bruen*'s dicta, but held that, "even if *Bruen* green-lighted similar but less burdensome restrictions, like some shall-issue carry regimes, we are still obligated to independently compare more burdensome

13

restrictions, like shall-issue possession regimes, against the historical record." Slip Op. at 13 n.9 (emphasis omitted). Petitioners do not suggest that the shall-issue carry regimes discussed in *Bruen* are sufficiently relevant to be a historical record justifying the HQL Requirement. Nor could they. The panel decision does not conflict with *Bruen*.

## III. The panel decision does not have far-ranging implications for other firearms restrictions.

Petitioners argue that the panel decision "has far-reaching implications" because its analysis will render "presumptively unconstitutional" all laws burdening the right to acquire arms. Pet. at 16. Maryland's HQL Requirement is an outlier. Few other states have any permit-to-purchase requirement, and none imposes all of Maryland's peculiar and onerous obstacles to acquisition. *See* Appellants' Br. at 26–31. And other states' even-less-restrictive statutes have come under fire in the courts.

In any event, *Bruen* requires that, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. A law that burdens protected conduct is presumed unconstitutional unless and until the government can justify its law with sufficient historical precedent. *Id*. The panel did not create this precedent, it just faithfully applied it. The panel decision does not

expand or modify *Bruen*, and it does not provide authority for other courts to make holdings contrary to any of *Bruen*'s holdings.

Petitioners assert that Maryland can no longer enact measures to "ensure only that those **bearing arms** in the jurisdiction are, in fact, law-abiding, responsible citizens." Pet. at 16 (internal quotation omitted) (emphasis added). But the HQL Requirement has no impact on who may bear arms outside the home. Maryland requires a carry permit to do so, *see* Md. Code Ann., Public Safety, § 5-306, and as recently amended by the Maryland General Assembly, that system imposes a host of rigorous training and live-fire requirements, *see* 2023 Maryland Session Laws Ch. 65. That system is not at issue in this case. Regardless, Maryland's 77R handgun requirement ensures that only law-abiding, responsible citizens may acquire a handgun. Even without the HQL Requirement's burdens on law-abiding, responsible citizens, Maryland's robust background check system would still prevent prohibited persons from acquiring a handgun.

Petitioners incorrectly argue that the panel decision erred by striking a law that promoted public safety. Pet. at 16 (arguing that the panel decision "impacts public safety by . . . eliminat[ing] an important—and demonstrably effective—tool for reducing firearm violence"). Even if this were true, which it is not, *Bruen* foreclosed lower courts from upholding firearm laws under such rationales, because

15

evidence that a challenged law advances public safety does not "justify granting States greater leeway in restricting firearm ownership and use." *Bruen*, 597 U.S. at 17 n.3. *Bruen* made clear that "[t]o justify its regulation, the government may not simply posit that the regulation promotes an important interest." *Id*. at 17. Nor may the courts "engage in independent means-end scrutiny under the guise of an analogical inquiry." *Id.* at 29 n.7.

## CONCLUSION

For the foregoing reasons, this Court should deny the Petition for Rehearing En Banc.

Dated: December 18, 2023

Respectfully Submitted,

Cary J. Hansel, III
2514 N. Charles Street
Baltimore, MD 21218
Phone: 301-461-1040
cary@hansellaw.com

*/s/ Mark W. Pennak*
Mark W. Pennak
Maryland Shall Issue, Inc.
9613 Harford Rd., Suite C #1015
Baltimore, MD 21234
Phone: 301-873-3671
m.pennak@me.com

Counsel for Appellants

*/s/ John Parker Sweeney*
John Parker Sweeney
James W. Porter, III
Marc A. Nardone
Connor M. Blair
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-393-7150
jsweeney@bradley.com

Counsel for Appellant Atlantic Guns, Inc.

16

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Fed. R. App. P. 28(e)(2)(a) because this brief contains fewer than 3,900 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(viii).

This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

Dated: December 18, 2023.


/s/ John Parker Sweeney
John Parker Sweeney

Counsel for Appellant Atlantic Guns, Inc.

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of December, 2023, a copy of the foregoing was served via electronic delivery to all parties' counsel via the Court's appellate CM/ECF system, which will forward copies to Counsel of Record.

*/s/ John Parker Sweeney*
John Parker Sweeney

Counsel for Appellant Atlantic Guns, Inc

18