No. 21-2017(L)

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT**

_____

**MARYLAND SHALL ISSUE, INC.,** *et al.*,

*Plaintiffs-Appellants*,

**v.**

**WES MOORE,** *et al.*,

*Defendants-Appellees.*

_____

On Appeal from the United States District Court for the District of Maryland
(Ellen L. Hollander, District Judge)

_____

**SUPPLEMENTAL *EN BANC* BRIEF FOR APPELLANTS**

_____

Cary J. Hansel, III
2514 N. Charles Street
Baltimore, MD 21218
Phone: 301-461-1040
cary@hansellaw.com

Mark W. Pennak
Maryland Shall Issue, Inc.
9613 Harford Rd., Suite C #1015
Baltimore, MD 21234
Phone: 301-873-3671
m.pennak@me.com

Counsel for Appellants Maryland
Shall Issue, Inc., Deborah Kay Miller,
and Susan Brancato Vizas

John Parker Sweeney
James W. Porter, III
Connor M. Blair
W. Chadwick Lamar, Jr.
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-719-8216
Facsimile: 202-719-8316
jsweeney@bradley.com

Counsel for Appellant Atlantic Guns,
Inc.

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................... iii

INTRODUCTION .................................................................................. 1

STATEMENT OF THE ISSUE................................................................ 4

BACKGROUND ................................................................................... 5

ARGUMENT ....................................................................................... 8

    I.     The HQL Requirement burdens conduct that is presumptively protected by the Second Amendment ..................................................... 9

    II.    The State has failed to prove that the HQL Requirement is consistent with this Nation's historical tradition of firearm regulation............................................................................. 12

    III.   *Bruen*'s carry-license dicta cannot save the HQL Requirement ......... 14

    IV.   This Court should not remand for additional proceedings.................. 21

CONCLUSION .................................................................................... 22

# TABLE OF AUTHORITIES

**Cases**

*Antonyuk v. Chiumento*,
    89 F.4th 271 (2d Cir. 2023) .........................................................................12, 13

*Atkinson v. Garland*,
    70 F.4th 1018 (7th Cir. 2023) ............................................................................12

*Brown v. Davenport*,
    596 U.S. 118 (2022)...........................................................................................2, 16

*Brown v. Stites Concrete, Inc.*,
    944 F.2d 553 (8th Cir. 1993) (*en banc*) .............................................................8

*Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*,
    868 F.3d 104 (2d Cir. 2017) ..............................................................................21

*Cohens v. Virginia*,
    19 U.S. (6 Wheat.) 264 (1821) ...........................................................................16

*District of Columbia v. Heller*,
    554 U.S. 570 (2008)......................................................... 1, 3, 9, 10, 17, 18, 21

*Drummond v. Robinson*,
    9 F.4th 217 (3d Cir. 2021) .................................................................................9, 14

*Dorce v. City of New York*,
    2 F.4th 82 (2d Cir. 2021) ...................................................................................13

*Ezell v. City of Chicago*,
    651 F.3d 684 (7th Cir. 2011) ..............................................................................9

*Frein v. Penn. State Police*,
    47 F.4th 247 (3d Cir. 2022) ...............................................................................10, 12

*Jackson v. City & Cnty. of San Francisco*,
    746 F.3d 953 (9th Cir. 2014) ..............................................................................9

*Kolbe v. Hogan*,
 849 F.3d 114 (4th Cir. 2017) (*en banc*) ........................................................6, 21

*Konigsberg v. State Bar of Cal.*,
 336 U.S. 36 (1961) ...........................................................................................11

*Lara v. Comm'r Penn. State Police*,
 91 F.4th 122 (3d Cir. 2024) .............................................................................20

*Lucio v. Lumpkin*,
 987 F.3d 451 (5th Cir. 2021) (*en banc*) .............................................................8

*Manning v. Caldwell for City of Roanoke*,
 930 F.3d 264 (4th Cir. 2019) (*en banc*) ...................................................8, 21, 22

*Maryland Shall Issue, Inc. v. Hogan*,
 No. MJG-16-3311, 2017 WL 3891705 (D. Md. Sept. 6, 2017) ..........................9

*Maryland Shall Issue, Inc. v. Hogan*,
 566 F. Supp. 3d 404 (D. Md. 2021) ...................................................................6

*Maryland Shall Issue, Inc. v. Hogan*,
 971 F.3d 199 (4th Cir. 2020) ..........................................................................6, 9

*Maryland Shall Issue, Inc. v. Moore*,
 86 F.4th 1038 (4th Cir. 2023) ("Slip Op.") .................................................*passim*

*Nat'l Pork Producers Council v. Ross*,
 598 U.S. 356 (2023)..........................................................................................16

*New York State Rifle & Pistol Ass'n, Inc. v. Bruen*,
 597 U.S. 1 (2022)......................................................................................*passim*

*Nunn v. State*,
 1 Ga. 243 (1846) ..............................................................................................10

*Teixeira v. Cnty. of Alameda*,
 73 F.3d 670 (9th Cir. 2017) (*en banc*) ...............................................................9

*Tex. Democratic Party v. Abbott*,
 978 F.3d 168 (5th Cir. 2020) ............................................................................11

*United States v. Simms*,
    914 F.3d 229 (4th Cir. 2019) (*en banc*) ............................................................22

**Statutes**

Fla. Stat. § 790.01 ............................................................19

Md. Code Ann., Pub. Safety § 5-117 ............................................................5, 6

Md. Code Ann., Pub. Safety § 5-117.1 ............................................................5, 6

Md. Code Ann., Pub. Safety § 5-118 ............................................................6

Md. Code Ann., Pub. Safety § 5-123 ............................................................6

Md. Code Ann., Pub. Safety §§ 5-117 through 5-130 ............................................................5

Md. Code Ann., Pub. Safety §§ 5-301 through 5-314 ............................................................6

Neb. Stat. § 28-1202.01 ............................................................19

Neb. Stat. § 69-2445 ............................................................19

S.B. 1, 2024 2d Extra. Sess. (La.) ............................................................19

**Other Authorities**

1 Samuel Johnson, Dictionary of the English Language (4th ed. 1773) ................10

1 Noah Webster, American Dictionary of the English Language
    (1828) ............................................................10

## INTRODUCTION

*New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), established the straightforward standard governing all Second Amendment challenges. First, "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Id.* at 17. Second, a law burdening that protected conduct is unconstitutional unless the government "demonstrate[s] that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.* The only way for the government to meet this burden is to "affirmatively prove" based on "historical precedent" that an "enduring" and "comparable tradition of regulation" supports the challenged law. *Id.* at 19, 27, 67. Maryland has failed to meet its burden to prove that the Handgun Qualification License requirement ("HQL Requirement")—the State's novel, burdensome, and redundant acquisition-and-possession-licensing regime for handguns—is consistent with this Nation's historical tradition. That failure is dispositive. This Court should strike down the HQL Requirement.

The HQL Requirement burdens conduct that is presumptively protected by the Second Amendment because it infringes the right of law-abiding citizens to acquire and possess a handgun for self-defense in the home. *District of Columbia v. Heller*, 554 U.S. 570, 592, 635 (2008) (the Second Amendment "elevates above all

1

other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home"). The State has never argued otherwise.

The State has failed to prove that the HQL Requirement is consistent with this Nation's historical tradition, and it no longer even tries to do so. In prior briefing, the State cited only laws with little resemblance to the HQL Requirement. (Appellees' Br. at 32–37). It then admitted to the Panel that the HQL Requirement lacks any historical support. Oral Arg. at 23:05–23:29 (conceding State was "unable to find any [Founding Era statute] that required advance permission" and not citing any Reconstruction Era sources). Now, in its Petition, the State has abandoned any historical argument. (Petition for Rehearing *En Banc* ("*En Banc* Petition") at 1).

The HQL Requirement cannot survive scrutiny under *Bruen*'s governing standard. So the State seeks to evade *Bruen*'s governing standard by asking this Court to take "stray comments" in *Bruen*'s dicta discussing licensing criteria for **carry** permits and impermissibly "stretch them beyond their context—all to justify an outcome inconsistent with [*Bruen*'s] reasoning and judgment[]." *Brown v. Davenport*, 596 U.S. 118, 141 (2022). This is the State's only argument, and this Court should not be persuaded. The transparent effort to use inapposite dicta to swallow *Bruen*'s central holding fails on its face. *Bruen*, 597 U.S. at 24 (setting forth "**the** standard for applying the Second Amendment" (emphasis added)).

*Bruen*'s **carry**-license dicta cannot legitimize the HQL Requirement's restrictions on the **acquisition** and **possession** of a handgun for self-defense in the home. 597 U.S. at 38 n.9. That dicta does not expressly approve possession-licensing criteria. In fact, it has nothing to do with laws regulating acquisition and possession of a handgun for the "defense of hearth and home," which the Second Amendment "elevates above all other interests." *Heller*, 554 U.S. at 635. The Court merely left open the constitutionality of some inapposite shall-issue licensing criteria for public carry which, unlike possession, "has traditionally been subject to well-defined restrictions." *Bruen*, 597 U.S. at 38. Even giving that dicta more weight than it can bear, it must be limited to what it says: non-discretionary shall-issue **carry**-licensing criteria are not per se unconstitutional. It does not expressly, analogically, or as a matter of history, justify the HQL Requirement's more burdensome and unrelated restrictions on acquisition and possession.

Nor does *Bruen*'s carry-license dicta absolve the State of its burden to "affirmatively prove" a "comparable" and "enduring" "historical tradition," which the State has conceded it failed to do. *Id.* at 19, 27, 67. The Second Amendment yields **only** to "historical justifications," *Heller*, 554 U.S. at 635, and the State has offered **none** that could support the HQL Requirement.

3

Even if *Bruen*'s dicta had some application here, it would be only to reiterate the longstanding principle that certain restrictions on the exercise of fundamental rights are unconstitutional. The HQL Requirement is redundant of Maryland's preexisting possession-licensing regime that every purchaser must still undergo (Maryland's 77R Process, which already prevents prohibited individuals from obtaining a handgun), imposes lengthy wait times, and has been put to abusive ends by deterring tens of thousands of Marylanders from acquiring a handgun. The HQL Requirement is unconstitutional, notwithstanding *Bruen*'s carry-license dicta.

This Court should apply *Bruen* as directed by the Supreme Court and recognize what *Bruen*'s analysis makes clear: the HQL Requirement's ahistorical burdens on Second Amendment rights are unconstitutional.

## STATEMENT OF THE ISSUE

The State does not dispute that the HQL Requirement burdens protected conduct. Nor does the State dispute that it has not met its burden to prove that the HQL Requirement is consistent with this Nation's historical tradition of firearm regulation. The sole issue presented for *en banc* review is whether *Bruen*'s carry-license dicta exempts the State from *Bruen*'s text, history, and tradition standard, which governs **all** Second Amendment challenges and compels striking down the HQL Requirement.

4

## BACKGROUND

### I.    Legal Background

For nearly sixty years, Maryland's 77R Handgun Registration Requirement ("77R Process") has successfully ensured that prohibited persons cannot acquire a handgun. (JA.662–63, 723). This acquisition-and-possession-licensing regime requires law-abiding, responsible Maryland citizens seeking to purchase a handgun to submit a 77R application and wait seven days while the Maryland State Police conducts an exhaustive background check across federal and state databases to ensure no prohibited person obtains a handgun. Md. Code Ann., Pub. Safety §§ 5-117, 5-118, 5-123(a). The 77R Process is not at issue in this appeal.

The State enacted the HQL Requirement in 2013 as an addition to the 77R Process. *See id.* § 5-117.1. Every non-exempt handgun purchaser must obtain an HQL before even beginning the 77R Process. *Id.* § 5-117(b)(4); *see also id.* § 5-117.1(a)–(c) (defining scope of HQL Requirement). To obtain an HQL, a purchaser must submit: (1) an online application; (2) proof of completion of a four-hour qualifying firearms safety course plus live-fire on one of Maryland's firearm ranges; (3) a complete set of electronic fingerprints from a State-approved live-scan private vendor; and (4) pay a $50 application fee. *Id.* § 5-117.1(d), (f), (g). Once the application is submitted, the purchaser must then wait up to 30 days while Maryland

State Police conducts a background check, which includes the National Instant Criminal Background Check System (NICS). *Id.* § 5-117.1(d)(4). Once the applicant obtains an HQL, she may then begin the 77R Process—including still another background check and seven-day wait—before she is able to acquire a handgun. *Id.* §§ 5-117, 5-118, 5-123(a). Maryland's 77R Process is not at issue in this appeal.

Neither acquiring an HQL nor completing the 77R Process entitles a Marylander to carry a handgun outside the home. The State has another set of laws regulating public carry, and anyone seeking to carry a handgun outside the home must separately obtain a "wear and carry permit." Md. Code Ann., Pub. Safety §§ 5-301 through 5-314. Maryland's carry-licensing laws are not at issue in this appeal.

## II.    Procedural History

Plaintiffs brought this challenge to the HQL Requirement in 2016. The District Court initially held that Plaintiffs lacked standing, but this Court reversed in relevant part. 971 F.3d 199, 216. On remand, the District Court held that the HQL Requirement "undoubtedly burden[s]" the "core Second Amendment right" to acquire and possess a handgun for self-defense in the home, 566 F. Supp. 3d 404, 424, but upheld the law under means-end scrutiny, *id.* at 440 (citing *Kolbe v. Hogan*, 849 F.3d 114, 140–41 (4th Cir. 2017) (*en banc*), *abrogated by Bruen*, 597 U.S. 1).

6

The State had ample opportunity to develop historical evidence under *Kolbe*. Appellate briefing was stayed while the Supreme Court considered *Bruen*, providing the State even more time to develop historical evidence. The State confirmed at Oral Argument both that it had a "robust record" of "evidence" and that remand would be futile. Oral Arg. at 37:53–38:10.

The Panel held that the HQL Requirement violates the Second Amendment. (Slip Op. at 7–8). It held that the HQL Requirement burdens protected conduct because it deprives law-abiding citizens of the ability to acquire and possess a handgun for self-defense until completion of the application process. (*Id.* at 9–12). It then held that the State failed to "provide historical evidence that justifies its law." (*Id.* at 14). The Panel rejected as historical analogues laws prohibiting "dangerous" persons from owning firearms because they imposed "markedly" lesser burdens, and it likewise rejected laws requiring militia training because they "imposed no burden on the right of keeping and bearing arms." (*Id.* at 16, 18). The State offered "no other" historical evidence and admitted it could not find any Founding Era law that "required advance permission" before acquiring a firearm. (*Id.* at 14, 19). The Panel concluded that the State "ha[d] not met its burden under *Bruen*, and its law cannot survive Plaintiffs' Second Amendment challenge." (*Id.* at 19–20).

7

The Panel correctly rejected "Maryland and the dissent['s]" reliance on *Bruen*'s carry-license dicta because that dicta does not displace *Bruen*'s required text-and-history standard or permit the State to escape its historical-tradition burden. (Slip. Op. at 12 n.9). And even if that dicta were construed as approving "most shall-issue *public carry* regimes," it does not justify "*more burdensome*" regimes governing "*possession*." (Slip. Op. at 13 n.9).

## ARGUMENT

*Bruen* mandates the standard for analyzing Second Amendment challenges: "[W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct"; to justify a firearm regulation burdening that conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." 597 U.S. at 17. The State admits it cannot satisfy its burden, and *Bruen*'s carry-license dicta cannot save the HQL Requirement.[1]

---

[1] This Court should not address any arguments that the State may prejudicially raise in its supplemental brief—including belated historical evidence—that were "deemed unworthy of orderly mention" in its *En Banc* Petition. *Manning v. Caldwell for City of Roanoke*, 930 F.3d 264, 271–72 (4th Cir. 2019) (*en banc*); *see also Lucio v. Lumpkin*, 987 F.3d 451, 478 (5th Cir. 2021) (*en banc*); *Brown v. Stites Concrete, Inc.*, 994 F.2d 553, 557 (8th Cir. 1993) (*en banc*).

8

I.   **The HQL Requirement burdens conduct that is presumptively protected by the Second Amendment.**

The Second Amendment's plain text covers Plaintiffs' conduct: to acquire and possess a handgun for self-defense in the home. The Second Amendment's text "guarantee[s] the individual right *to possess* and carry weapons in case of confrontation." *Heller*, 554 U.S. at 592 (emphasis added). That guarantee "implies a corresponding right to acquire" arms for self-defense. *Ezell v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011); *Drummond v. Robinson*, 9 F.4th 217, 227 (3d Cir. 2021) (following *Ezell*); *Teixeira v. Cnty. of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (*en banc*) (same); *Jackson v. City & Cnty. of San Francisco*, 746 F.3d 953, 967 (9th Cir. 2014) (same). The State has never "den[ied] that the HQL Provision and implementing regulations burden conduct within the scope of the Second Amendment." *Maryland Shall Issue, Inc. v. Hogan*, No. MJG-16-3311, 2017 WL 3891705, at *5 (D. Md. Sept. 6, 2017) (*see* JA.55); *see Maryland Shall Issue, Inc.*, 971 F.3d at 212 (holding the HQL Requirement facially "constrains Atlantic Guns' ability to sell handguns and limits its potential customer base").

The right "to keep . . . Arms" is "infringed" by even a temporary deprivation of that right, which "could well be the critical time in which the applicant expects to face danger." (Slip Op. at 11–12). Any contrary suggestion misconstrues the word "infringed" and misreads precedent.

9

Founding Era dictionaries defined "infringe" to include burdens that fall short of total or permanent deprivations. 1 Samuel Johnson, Dictionary of the English Language 1101 (4th ed. 1773) (defining "infringe" as "[t]o destroy; to *hinder*" (emphasis added)), *id.* at 1007 (defining "to hinder" as "to cause impediment"); 1 Noah Webster, American Dictionary of the English Language (1828) (defining "infringe" as "[t]o destroy or *hinder*" (emphasis added)); *id.* (defining "hinder" as "to obstruct for a time" and "[t]o interpose obstacles or impediments"). The Second Amendment "forbids lesser violations that hinder a person's ability to hold on to his guns." *Frein v. Penn. State Police*, 47 F.4th 247, 254 (3d Cir. 2022) (internal quotation omitted).

The Supreme Court's Second Amendment precedent confirms that less-than-total deprivations trigger the Second Amendment's protections. *Heller* declared that Second Amendment rights "shall not be *infringed*, curtailed, or broken in upon, in the smallest degree." 554 U.S. at 612 (quoting *Nunn v. State*, 1 Ga. 243, 251 (1846)). *Heller* also rejected the argument that a less-than-total ban on certain **kinds** of weapons (*i.e.*, handguns) is constitutional merely because "the possession of other firearms (*i.e.*, long guns) is allowed." *Id.* at 629.

*Bruen* then emphatically rejected the interest-balancing notion that the Second Amendment's protections depend on "the severity of the law's burden on that right,"

10

597 U.S. at 18, and held that a licensing regime "infringed" the Second Amendment, even though it fell short of total deprivation by allowing the plaintiffs to "carry to and from work," *id.* at 16. *Bruen* also confirmed that "sensitive places" restrictions burden protected conduct, even though those restrictions fall short of total deprivation by allowing individuals to carry in some but not all places. *Id.* at 30. And *Bruen* explained that the Second Amendment ("infringe[]") carries an "unqualified command" equal to that of the First Amendment ("abridg[e]"). *Id.* at 17 (quoting *Konigsberg v. State Bar of Cal.*, 336 U.S. 36, 49 n.10 (1961)); *see Tex. Democratic Party v. Abbott*, 978 F.3d 168, 190–92 (5th Cir. 2020) (holding law would "abridge" right to vote if it "creates a barrier to voting that makes it more difficult for the challenger to exercise her right to vote"). The HQL Requirement's non-permanent deprivations facially trigger the Second Amendment's protections.[2]

The Second Circuit's recent decision in *Antonyuk v. Chiumento*, 89 F.4th 271, 315 n.24 (2d Cir. 2023), which involved a challenge to New York's restrictions on public **carry**, does not counsel a different conclusion. Relying on *Bruen*'s carry-license dicta, *Antonyuk* suggested that temporary deprivations do not trigger the

---

[2] This deprivation exceeds 30-day waiting periods. The HQL Requirement's lengthy process, *infra* at 5–6, self-evidently takes longer than 30 days. It also precedes the 77R Process, which the purchaser may begin only after obtaining an HQL and itself can take a week or longer.

Second Amendment's protections. But it did not address any of the dispositive arguments discussed above, and it ignored that *Bruen*'s dicta had nothing to do with the Second Amendment's textual analysis or the novel, burdensome, and redundant **acquisition**-and-**possession**-licensing restriction before this Court. And *Bruen* did not hold—or even suggest—that only "lengthy" delays trigger the Second Amendment. *Id. Antonyuk* is not persuasive authority.

Because "the Second Amendment's 'plain text' covers the regulated conduct, the government has only one way to defend the regulation—by proving that it is 'consistent with this Nation's historical tradition of firearm regulation.'" *Atkinson v. Garland*, 70 F.4th 1018, 1020 (7th Cir. 2023); *Frein*, 47 F.4th at 254 ("[T]he Supreme Court recently instructed us to closely scrutinize *all* gun restrictions for a historically grounded justification."). The parties agree that the HQL Requirement fails that test.

## II.    The State has failed to prove that the HQL Requirement is consistent with this Nation's historical tradition of firearm regulation.

The State has failed to "affirmatively prove," based on "historical precedent," that an "enduring" and "comparable tradition of regulation" justifies the HQL Requirement. *Bruen*, 597 U.S. at 19, 27, 67. This Court should strike it down.

The State conceded to the Panel that it could not identify any relevantly similar analogue from the Founding Era, Oral Arg. at 23:05–23:29, much less one

12

that required advance permission (HQL Requirement) just to undergo still **another** acquisition-and-possession-licensing process (77R Process). *Dorce v. City of New York*, 2 F.4th 82, 102 (2d Cir. 2021) (parties are "bound by concessions made by their counsel at oral argument").

The State proffered two historical traditions to the Panel and has since abandoned them because neither justifies the HQL Requirement. First, the State sought to draw support from modern laws prohibiting "dangerous" people from owning firearms. (Slip Op. at 14). But dangerous-people prohibitions target a subset of individuals already adjudicated or categorized as dangerous, while the HQL Requirement "prohibits all people from acquiring handguns until they can *prove* that they are not dangerous." (Slip Op. at 16).[3] Second, the State cited Founding Era militia-training laws, but those laws did not impose any burden on acquisition or possession by militiamen, much less on non-militia. Militiamen were required to muster with firearms they already possessed. (Slip Op. at 18). Neither of those

---

[3] The Second Circuit mischaracterized the Panel as holding that "firearm licensing regimes based on a determination of 'dangerousness' are constitutionally impermissible." *Antonyuk*, 89 F.4th at 315 n.24. The Panel made no such holding, and even without the HQL Requirement the State has long been able to deter prohibited persons from obtaining handguns through the 60-year-old 77R Process.

13

proffered traditions justifies the HQL Requirement because, among other things,[4] they do not "impose a comparable burden" and are not "relevantly similar" to the HQL Requirement. *Bruen*, 597 U.S. at 29.

The HQL Requirement is dispositively and fatally ahistorical. It also is unprecedented by modern standards. Only a small minority of States have a permit-to-purchase regime, and the HQL Requirement is a uniquely burdensome outlier even among this minority. (Appellants' Br. at 29–30 & Ex. 1). And, again, obtaining an HQL does nothing more than allow a law-abiding citizen to begin the 77R Process. Even modern regulations do not present "comparable" restrictions. *Bruen*, 597 U.S. at 27. The HQL Requirement is an "outlier[] that our ancestors would never have accepted." *Id.* at 30 (quoting *Drummond*, 9 F.4th at 226). This Court should strike it down.

## III. *Bruen*'s carry-license dicta cannot save the HQL Requirement.

Without any historical justification, the State suggests that *Bruen*'s carry-license dicta allows this Court to sidestep *Bruen*'s governing standard. *Bruen*'s dicta has nothing to do with restrictions on the **acquisition** and **possession** of a handgun,

---

[4] 20th-century evidence cannot establish historical tradition. *Bruen*, 597 U.S. at 66 n.28.

14

and that dicta cannot textually, analogically, or as a matter of history justify the HQL Requirement.

The State misinterprets *Bruen*'s carry-license dicta as giving "express approval to the very same requirements that are being challenged in this case." (*En Banc* Petition at 15). That is false. *Bruen*'s dicta says nothing about **acquisition**-and-**possession** licensing criteria; rather, it is carefully limited to carry-licensing regimes. *Bruen*, 597 U.S. at 38 n.9. The footnote is appended to an analysis of historical traditions for "public carry." *Id.* at 38. The footnote begins by referencing 43 States' carry-licensing regimes, and nearly every sentence discusses "public carry" or "bearing arms." *Id.* at 38 n.9. So too does Justice Kavanaugh's concurrence. *Id.* at 79 (Kavanaugh, J., concurring) ("the Court's decision does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense"). This limited scope is consistent with the issue before the *Bruen* Court: the constitutionality of New York's carry-licensing regime.

Nor does *Bruen*'s dicta "approve" anything, even for **carry**-licensing regimes. The dicta itself precludes the State's reading: "we do not rule out constitutional challenges to shall-issue regimes." *Id.* at 38 n.9. Instead, this dicta merely recognizes that some non-discretionary criteria for carry licenses in some shall-issue jurisdictions may not be unconstitutional. That the Court provided examples of

15

carry-license criteria that might survive scrutiny—*e.g.*, background checks and safety courses—does not suggest that those preconditions are always constitutional. Likewise, that the Court provided other "example[s]" of preconditions unlikely to survive scrutiny—*e.g.*, lengthy wait times, exorbitant fees, and other "abusive" practices—does not suggest that these are the only characteristics that make a carry-license regime unconstitutional. *Id*.

This Court should reject the State's effort to "stretch" this dicta "beyond [its] context—all to justify an outcome inconsistent with [*Bruen*'s] reasoning and judgment[]." *Brown*, 596 U.S. at 141; *see Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 373–74 (2023) ("[O]ur opinions . . . must be read with a careful eye to context." (citing *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399–400 (1821) (Marshall, C.J.))). Properly contextualized, *Bruen*'s dicta and the **carry**-license regimes it discusses cannot justify the HQL Requirement's burdensome, ahistorical, and redundant restrictions on **acquisition** and **possession** of a handgun for self-defense in the home.

On text, *Bruen*'s carry-license dicta does not suggest that licensing criteria fall outside the Second Amendment's textual scope. It came after the Court concluded that the Second Amendment's plain text covered the plaintiffs' conduct and "turn[ed] to [the] historical evidence." *Bruen*, 597 U.S. at 38 & n.9. It illustrated

16

differences in burdens imposed by shall-issue and may-issue carry-licensing regimes—a quintessential historical inquiry. And it listed examples of criteria that—for carry licenses—might survive scrutiny, which would make no sense if such criteria fell outside the Second Amendment's scope altogether.

On history, *Bruen*'s dicta does not absolve the State of its burden to "affirmatively prove" a supporting "historical tradition." *Id.* at 19. *Heller* reserved consideration of the "historical justifications" of various "exceptions" and other "applications of the right to keep and bear arms" for later cases. 554 U.S. at 635. *Bruen* focused on the "historical record," including when analyzing whether bans for "sensitive places" might be constitutional. 597 U.S. at 30, 38. And *Bruen* dispositively "reiterate[d] that the standard for applying the Second Amendment" is "text, as informed by history." *Id.* at 19, 24. The State cannot sidestep its historical-tradition burden here. Nor can this Court ignore that requirement.

The constitutionality of the HQL Requirement's restrictions on the right to keep arms turns on whether the State has proven an "enduring" and "comparable" tradition of regulation based on "historical precedent." *Id.* at 19, 27, 67. Because a purported analogue cannot justify a law unless it "impose[s] a comparable burden" and is "comparably justified," *id.* at 29, the State cannot satisfy its historical-tradition burden through reliance on the carry-licensing criteria referenced in *Bruen*'s dicta.

17

First, carry-licensing criteria do not impose a burden comparable to Maryland's HQL Requirement, which flatly bans acquisition and possession of the "quintessential self-defense weapon," including in the home where the need for armed self-defense is "most acute." *Heller*, 554 U.S. at 628–29. Carry-licensing criteria do not prohibit acquisition or possession; those laws only dictate where people can go with their handgun. As the Panel put it, "[a] restriction on whether someone can even possess a firearm in or out of the home is more burdensome than one that only limits his right to carry that firearm publicly." (Slip Op. at 13 n.9). Carry restrictions cannot satisfy the State's burden. *Bruen*, 597 U.S. at 29.

The State misapplies *Bruen*'s statement that "[n]othing in the Second Amendment's text draws a home/public distinction." (*En Banc* Petition at 15 (quoting *Bruen*, 597 U.S. at 32)). That statement is relevant only to textual analysis (step one). When it comes to history (step two), there is a difference between possession in the home (including the corresponding right to acquire) and carry in public. Public carry entails different safety risks than at-home possession, so carry-licensing criteria demand a dispositively different "why" than acquisition and possession preconditions. *See Bruen*, 597 U.S. at 29. Unlike possession, public carry "has traditionally been subject to well-defined restrictions governing the intent for which one could carry arms, the manner of carry, or the exceptional circumstances

under which one could not carry arms." *Id.* at 38. That difference is precisely why *Heller* (possession) and *Bruen* (public carry) analyzed different sets of history. These differences further demonstrate that carry-license criteria and the HQL Requirement do not impose "comparable burden[s]" and are not "comparably justified." *Id.* at 29.

Second, the carry-licensing regimes referenced in *Bruen*'s dicta cannot impose a "comparable burden" because, in a majority of states, those regimes do not prohibit armed self-defense at all. *Bruen* stated that some carry-licensing criteria "do not necessarily prevent 'law-abiding, responsible citizens,' from exercising their Second Amendment right to public carry," *id.* at 38 n.9, but said that only after recognizing that 26 States permitted concealed or open carry with no license whatsoever, *id.* at 13 n.1.[5] It thus is usually not a prerequisite to armed self-defense in public that an individual satisfy **any** criteria. But Maryland predicates handgun acquisition and possession for self-defense in the home on the satisfaction of both the HQL Requirement and the 77R Process. And if a Marylander wants to bear that handgun in public, she must also satisfy a third process to obtain a carry permit. Just

---

[5] This includes 25 States that "approved permitless carry laws" and Delaware, which has "no licensing requirement for open carry." *Bruen*, 597 U.S. at 13 n.1. Florida and Nebraska recently enacted permitless-carry laws. Fla. Stat. § 790.01; Neb. Stat. §§ 28-1202.01, 69-2445. Although not recognized in *Bruen*, Louisiana has never conditioned open carry on acquiring a license, and it soon will enact a permitless concealed-carry law. S.B. 1, 2024 2d Extra. Sess. (La.). The total is now 29 States.

19

as militia-training laws that "imposed no burden" could not justify the HQL Requirement, (Slip Op. at 19), neither can carry-licensing criteria.

Third, the modern carry-licensing regimes discussed in *Bruen*'s dicta cannot justify the HQL Requirement because they neither suggest nor prove a requisite "historical" tradition. The State has not presented any "historical precedent" to meet its burden of demonstrating a justifying historical tradition, *Bruen*, 597 U.S. at 27, and its "speculat[ion]" based on modern statutes does not suffice, *id.* at 58 n.25; *see also id.* at 66 n.28 (disregarding 20th-century evidence as irrelevant). The State "bears the burden of identifying a 'founding-era' historical analogue to the" HQL Requirement. *Lara v. Comm'r Penn. State Police*, 91 F.4th 122, 129 (3d Cir. 2024) (citing *Bruen*, 597 U.S. at 24–29). The State has not come close to meeting its burden.

Fourth, assuming *arguendo* that *Bruen*'s carry-license dicta had some application to licenses for acquisition and possession, the HQL Requirement would still be unconstitutional. *Bruen*'s dicta suggests that lengthy wait times, exorbitant fees, and other abusive practices are unconstitutional. 597 U.S. at 38 n.9. The HQL Requirement imposes these kinds of impermissible burdens. It is redundant of the State's existing 77R Process, and the State does not need two background checks to determine if a person is a law-abiding, responsible citizen. The HQL Requirement

20

also imposes lengthy wait times by requiring applicants to obtain fingerprints, complete classroom instruction and live-fire, and wait up to 30 days for the State to approve an application. And it has been put toward abusive ends by deterring tens of thousands of law-abiding, responsible citizens from acquiring handguns. (JA.927, 934, 938, 940, 1872–73). Even under the State's theory, the HQL Requirement is unconstitutional.

The HQL Requirement burdens protected conduct. The State has failed to prove a requisite historical tradition. And *Bruen*'s carry-license dicta does not justify the HQL Requirement's burdensome restrictions on acquisition and possession.

## IV. This Court should not remand for additional proceedings.

Remand is neither necessary nor appropriate. The State disavowed the need for remand to develop historical evidence, Oral Arg. at 37:53–38:10, and did not ask for remand in its *En Banc* Petition. The State had ample opportunity to prove that the HQL Requirement is consistent with this Nation's historical tradition, as required under *Heller* and *Kolbe* even before *Bruen*. The problem is not a lack of opportunity but a lack of evidence and, as the State admits, remand will not fix that. *Bruen* instructs courts to decide cases "based on the historical record compiled by the parties." 597 U.S. at 25 n.6. This Court should do so on the present record.

Nor is remand appropriate for severability. The State has not raised any "severability" argument and has forfeited it. *See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 118 (2d Cir. 2017) (collecting cases). The State has never asked for severance, even alternatively. The State instead "deemed" severability "unworthy of orderly mention," *Manning*, 930 F.3d at 271, and reaching the issue now would prejudice Plaintiffs who never had a chance to respond to that argument, *id.* at 272. There is no reason why this Court should look past the State's failure to raise or address severability. *United States v. Simms*, 914 F.3d 229, 238 (4th Cir. 2019) (*en banc*).

## CONCLUSION

This Court should reverse the judgment of the District Court and remand the case with instruction to enter judgment for Plaintiffs.

Dated: March 1, 2024

Cary J. Hansel, III
2514 N. Charles Street
Baltimore, MD 21218
Phone: 301-461-1040
Facsimile: 443-451-8606
cary@hansellaw.com


/s/ Mark W. Pennak
Mark W. Pennak
Maryland Shall Issue, Inc.
9613 Harford Rd., Suite C #1015
Baltimore, MD 21234
Phone: 301-873-3671
m.pennak@me.com


Counsel for Appellants Maryland Shall
Issue, Inc., Deborah Kay Miller, and
Susan Brancato Vizas

Respectfully Submitted,

/s/ John Parker Sweeney
John Parker Sweeney
James W. Porter, III
Connor M. Blair
W. Chadwick Lamar, Jr.
Bradley Arant Boult Cummings LLP
1615 L Street N.W., Suite 1350
Washington, D.C. 20036
Phone: 202-719-8216
Facsimile: 202-719-8316
jsweeney@bradley.com

Counsel for Appellant Atlantic Guns,
Inc.

23

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of the Fourth Circuit's briefing order (ECF No. 83), because this brief contains 4,791 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman font.

Dated: March 1, 2024.

/s/ *John Parker Sweeney*
John Parker Sweeney

Counsel for Appellant Atlantic Guns, Inc.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 1st day of March, 2024, a copy of the foregoing was served via electronic delivery to all parties' counsel via the Court's appellate CM/ECF system, which will forward copies to Counsel of Record.

*/s/ John Parker Sweeney*
John Parker Sweeney

Counsel for Appellant Atlantic Guns, Inc

25